**Francisco GARCIA, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

and

**Heinrich Letkeman, Appellant,**

v.

**Commonwealth of Kentucky, Appellee.**

Nos. 2004–CA–002271–MR, 2004–CA–002283–MR.

Court of Appeals of Kentucky.

Feb. 24, 2006.

Jack W. Flynn, Darnell & Flynn, Frankfort, KY, for appellant Francisco Garcia.

Rodney McDaniel, Frankfort, KY, for appellant Heinrich Letkeman.

Gregory D. Stumbo, Attorney General of Kentucky, Matthew R. Krygiel, Robert E. Prather, Assistant Attorneys General of Kentucky, Frankfort, KY, for appellee.

Before MINTON, SCHRODER, and TAYLOR, Judges.

## OPINION

TAYLOR, Judge.

Francisco Garcia brings Appeal No.2004–CA–002271–MR from an October 4, 2004, judgment of the Franklin Circuit Court entered upon a conditional plea of guilty to trafficking in marijuana. Heinrich Letkeman brings Appeal No.2004–CA–002283–MR from an October 4, 2004, judgment of the Franklin Circuit Court entered upon a conditional plea of guilty to trafficking in marijuana. We reverse and remand Appeal No.2004–CA–002271–MR. We affirm Appeal No.2004–CA–002283–MR.

On March 6, 2004, Garcia and his passenger, Letkeman, were traveling upon In-

terstate 64 in a 1993 Dodge Caravan. Kentucky State Trooper Jeremy Devasher approached the vehicle and noticed the vehicle quickly changed to the right lane. The trooper testified that he pulled his cruiser alongside the vehicle. Trooper Devasher thought that the driver, Garcia, looked nervous because he avoided making eye contact with the trooper and kept a "death grip" on the steering wheel of the vehicle. The trooper then observed cracks in the windshield of Garcia's vehicle and thought the cracks impaired Garcia's forward vision. At this point, Trooper Devasher stopped the vehicle for a traffic violation.

Trooper Devasher testified that he asked Garcia a series of questions in both English and Spanish; consequently, the trooper believed Garcia spoke English very well. Trooper Devasher testified that Garcia and Letkeman's stories concerning their travel plans fell apart upon further questioning. The trooper also noted that neither had any luggage for a purported trip to Virginia.

The trooper issued a citation for a cracked windshield pursuant to Kentucky Revised Statutes (KRS) 189.110. After issuing the citation, the trooper informed Garcia the traffic stop was complete and he was free to leave. Trooper Devasher then asked Garcia for permission to search the vehicle. The trooper testified that Garcia nodded affirmatively and pointed to the vehicle. A search was commenced, and ten bricks of marijuana were seized from the vehicle.

Garcia and Letkeman were indicted by the Franklin County Grand Jury upon the offense of trafficking in marijuana over five pounds (KRS 218A.1421(4)). Thereafter, Garcia and Letkeman filed motions to suppress the evidence seized (marijuana) from the search of the vehicle. After an evidentiary hearing, the circuit court denied both motions to suppress.

Garcia and Letkeman entered conditional pleas of guilty to the offenses of trafficking in marijuana. Pursuant to the conditional pleas, Garcia and Letkeman preserved the issue of whether the circuit court properly denied their motions to suppress. *See* Ky. R.Crim. P. 8.09. On October 4, 2004, Garcia and Letkeman were each sentenced to seven years' imprisonment with one year to serve and the remaining sentence probated for a period of five years. These appeals follow.

### Appeal No.2004–CA–002271–MR

Garcia contends the circuit court erroneously denied the motion to suppress evidence seized from his vehicle. Specifically, Garcia contends the stop of his vehicle based upon the cracked windshield was improper. Garcia argues that the cracked windshield was not a violation of KRS 189.110. Thus, he contends the initial stop of the vehicle was without reasonable suspicion of criminal activity and the circuit court erred by denying his motion to suppress evidence.

Our standard of review of a suppression determination is succinctly set forth in *Stewart v. Commonwealth*, 44 S.W.3d 376, 380 (Ky.App.2000)(footnote omitted):

First, the factual findings of the court are conclusive if they are supported by substantial evidence. The second prong involves a *de novo* review to determine whether the court's decision is correct as a matter of law.

We observe that resolution of this appeal involves issues of both fact and law.

 It is well-established that the stopping of a vehicle and detaining of its occupants amounts to a seizure under the Fourth Amendment of the United States Constitution and under Section 10 of the

Kentucky Constitution. It is equally axiomatic that a police officer may stop a motor vehicle if that officer possesses reasonable suspicion that criminal activity has occurred or is imminent. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). The occurrence of a traffic violation is recognized as sufficient justification to warrant a stop of a motor vehicle.

The initial stop of Garcia's vehicle was originally premised upon Trooper Devasher's belief that the cracked windshield constituted a violation of KRS 189.110. This statute provides as follows:

(1) A windshield in a fixed and upright position, that is equipped with safety glazing as required by federal safety-glazing material standards, is required on every motor vehicle which is operated on the public highways, roads, and streets, except on a motorcycle or implement of husbandry.

(2) A person shall not operate a motor vehicle on a public highway, road, or street with any sign, sunscreening material, product, or covering attached to, or located in or upon the windshield, except the following:

(a) A certificate or other paper required to be displayed by law;

(b) Sunscreening material along a strip at the top of the windshield, if the material is transparent and does not encroach upon the driver's direct forward viewing area as defined in Federal Motor Vehicle Safety Standards No. 205 as the AS/1 portion of the windshield.

(3) A person shall not operate a motor vehicle required to be registered in the Commonwealth, on a public highway, road, or street on which vehicle the side wings and side windows on either side forward of or adjacent to the operator's seat are composed of,

covered by, or treated with any sunscreening material or other product or covering which has the effect of making the window nontransparent or which would alter the window's color, increase its reflectivity, or reduce its light transmittance, except as expressly permitted by this section. A sunscreening material may be applied to the windows if, when tested on one-eighth (1/8) inch clear glass, the material has a total solar reflectance of visible light of not more than twenty-five percent (25%) as measured on the nonfilm side and a light transmittance of at least thirty-five percent (35%) in the visible light range.

(4) A person shall not operate a motor vehicle required to be registered in the Commonwealth, on a public highway, road, or street on which vehicle any windows behind the driver are composed of, covered by, or treated with any sunscreening material, or other product or material which has the effect of making the window nontransparent or which would alter the window's color, increase its reflectivity, or reduce its light transmittance, except as specified below:

(a) Sunscreen material consisting of film which, when tested on one-eighth (1/8) inch clear glass, has a total solar reflectance of visible light of not more than thirty-five percent (35%) as measured on the nonfilm side and a light transmittance of at least eighteen percent (18%) in the visible light range; however, sunscreen material which, when tested on one-eighth (1/8) inch clear glass, has a total solar reflectance of visible light of not more than thirty-five percent (35%) as measured on the nonfilm

side and a light transmittance of at least eight percent (8%) in the visible light range may be used on multipurpose passenger vehicles;

(b) Perforated sunscreening material which, when tested in conjunction with existing glazing or film material, has a total reflectance of visible light of not more than thirty-five percent (35%) and a light transmittance of no less than thirty percent (30%). For those products or materials having different levels of reflectance, the highest reflectance from the product or material will be measured by dividing the area into sixteen (16) equal sections and averaging the overall reflectance. The measured reflectance of any of those sections may not exceed fifty percent (50%).

(5) A person shall not operate a motor vehicle required to be registered in the Commonwealth, upon a public highway, road, or street, on which vehicle the rear window is composed of, covered by, or treated with any material which has the effect of making the window nontransparent, unless the vehicle is equipped with side mirrors on both sides.

(6) Each installer or seller of sunscreening material shall provide a pressure-sensitive, self-destructive, non-removable, vinyl-type film label to the purchaser stating that the material complies with the provisions of KRS 189.010(20) to (23) and subsections (1) to (5) of this section. Each installer shall affix the required label to the inside left door jamb of the motor vehicle. In addition, the label shall state the trade name of the material and the installer's or seller's business name. Labeling is not required for factory glazing which complies with Federal Motor Vehicle Safety Standard No. 205.

(7) Every percentage measurement required by subsections (3) and (4) of this section is subject to a tolerance of plus or minus three percent (3%).

(8) A person shall not install window tinting materials on a vehicle that fails to meet the minimum standards for light transmission pursuant to subsections (3) and (4) of this section. Tinted material that fails to meet the minimum standards for light transmission pursuant to subsections (3) and (4) of this section shall be removed immediately.

(9) A person who applies sunscreening materials in violation of this section shall be guilty upon conviction of a Class B misdemeanor.

(10) Nothing in this section shall prevent the display of a representation of the American flag on the rear window of any motor vehicle, including any vehicle owned by a local or state government, provided that the representation does not exceed a size of five (5) inches by eight (8) inches and is placed in a lower corner of the rear window.

(11) The windshield on every motor vehicle shall be equipped with a device for cleaning rain, snow or other moisture from the windshield. The device shall be so constructed as to be controlled by the operator of the vehicle.

(12) Nothing in this section shall be construed to prevent the use of any window which is composed of, covered by, or treated with any material or component in a manner approved by federal statute or regulation if the window was a component part of a vehicle at the time

of the vehicle manufacture, or the replacement of any window by a covering which meets these requirements.

KRS 189.110.

■ A reading of KRS 189.110 reveals that it provides requirements for window sunscreening and tinting. It also sets forth mandatory safety glazing of glass and windshield wiper requirements. It, however, does not set forth any express or implied proscriptions against cracks in a vehicle's windshield. Based upon the plain language of KRS 189.110, a cracked windshield simply does not constitute a violation of its provisions. As a cracked windshield is not a violation of KRS 189.110, we believe the Commonwealth cannot justify the stop of Garcia's vehicle upon same.

Alternatively, the Commonwealth argues the traffic stop was lawful because the cracked windshield was a violation of KRS 189.020, which states as follows:

Every vehicle when on a highway shall be so equipped as to make a minimum of noise, smoke or other nuisance, to protect the rights of other traffic, and to promote the public safety.

■ The interpretation of a statute is a matter of law for the court. *City of Worthington Hills v. Worthington Fire Prot. Dist.*, 140 S.W.3d 584 (Ky.App.2004). When interpreting a statute, a word is to be afforded its ordinary meaning unless it has acquired a technical meaning. *Id.* Upon examination of KRS 189.020, we must initially decide whether a cracked windshield constitutes an "other nuisance" within its meaning. When interpreting the term "other nuisance" in KRS 189.020, we are guided by the rule of statutory interpretation called *ejusdem generis:*

[W]here, in a statute, general words follow or precede a designation of particular subjects or classes of persons, the meaning of the general words ordinarily will be presumed to be restricted by the particular designation, and to include only things or persons of the same kind, class, or nature as those specifically enumerated, unless there is a clear manifestation of a contrary purpose.

*Steinfeld v. Jefferson County Fiscal Court,* 312 Ky. 614, 229 S.W.2d 319, 320 (1950) (citations omitted). Applying the rule of *ejusdem generis* to KRS 189.020, the term "other nuisance" is preceded by the particular designation of "noise" and "smoke." To effectuate legislative intent, we believe "other nuisance" should be interpreted as including only those nuisances of a similar kind as noise and smoke. Accordingly, we do not interpret the term "other nuisance" in KRS 189.020 as encompassing a cracked windshield.

■ KRS 189.020 also requires a vehicle to be equipped so as "to protect the rights of other traffic, and to promote the public safety." A cracked windshield that unreasonably impairs the vision of a driver certainly increases the risk and likelihood of an accident. The increased risk would undoubtedly present a significant threat to public safety and would adversely affect the rights of other traffic. Therefore, we hold that a cracked windshield must unreasonably impair the vision of a vehicle's driver to constitute a violation of KRS 189.020. We emphasize that a cracked windshield is a violation of KRS 189.020 only if it is of sufficient severity to unreasonably reduce the driver's visibility.

In the case at hand, Trooper Devasher testified that he believed the cracked windshield impaired Garcia's forward vision. The circuit court concluded:

Courts hold that stopping a vehicle for a traffic law violation is constitutionally permissible under the *Terry* test. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996);

*Commonwealth v. Fox,* Ky., 48 S.W.3d 24 (2001). That is the situation here. Before stopping the Defendants' vehicle, the officer observed two cracks in the vehicle's windshield. The officer believed the cracks impaired the driver's vision and violated KRS 189.110. The officer subsequently stopped the vehicle and issued Defendant Garcia a citation for this violation. The vehicle stop, therefore, did not contravene the Constitution.

In the record, there exists a photograph of Garcia's vehicle, which provides a full view of the windshield. Upon examination of the photograph, the cracks do not appear to be of sufficient severity to unreasonably impair Garcia's forward vision. We observe that mere hairline cracks of a vehicle's windshield are not typically of sufficient severity to constitute a violation of KRS 189.020. Hence, we are of the opinion that the cracks in the windshield of Garcia's vehicle were not of sufficient severity to constitute a violation of KRS 189.020.

■ We also reject the Commonwealth's attempt to justify the stop as an investigatory stop based upon reasonable suspicion of criminal activity under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Commonwealth particularly argues:

> Furthermore, given the training and experience of this officer, other indicia were present that suggested criminal activity might be afoot. The nervousness displayed by the driver, the erratic lane change upon observing that the officer was near, the failure to make eye contact, the "death grip" on the steering wheel, and the foreign license plate (knowing that the drug interdiction training indicated that illegal drugs typi-

cally travel east to west) led to further suspicion.

Commonwealth's Brief at 12.

In *Commonwealth v. Banks,* 68 S.W.3d 347, 350–351 (Ky.2001), the Supreme Court emphasized:

> [T]he test for a *Terry* stop … is *not* whether an officer can conclude that an individual is engaging in criminal activity, but rather whether the officer can articulate reasonable facts to suspect that criminal activity *may* be afoot…. The totality of the circumstances must be evaluated to determine the probability of criminal conduct, rather than the certainty.

In the case *sub judice,* the articulated facts set forth by Trooper Devasher were Garcia's nervousness, lane change, failure to make eye contact, "death grip" on the steering wheel, and out-of-state license plate. We believe these facts describe a substantial number of drivers on our highways and constitute an innocuous mirage created in an attempt to retrospectively justify the stop. If we were to accept the Commonwealth's argument, ordinary law abiding citizens could be subjected to a stop by police based upon routine driving habits. Simply put, such routine driving habits do not warrant a police stop under *Terry.* As such, we do not believe that Trooper Devasher possessed the requisite reasonable suspicion to justify an investigatory stop of Garcia's vehicle.

In sum, we hold the initial stop of Garcia's vehicle was improper and the circuit court erred by denying Garcia's motion to suppress the marijuana subsequently seized from the vehicle.

We view Garcia's remaining contentions as moot.

### *Appeal No.2004–CA–002283–MR*

Letkeman argues that the circuit court improperly denied his motion to suppress

the evidence seized from the vehicle.[1] Specifically, Letkeman contends that a cracked windshield is not a violation of KRS 189.110; thus, the initial stop was invalid. Letkeman further maintains that Garcia did not voluntarily consent to the search of the vehicle.

It has been recognized that the protection of the Fourth Amendment against unreasonable search and seizure is a personal right and cannot be vicariously asserted. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)(citing *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)). To have standing to contest a search and seizure, an individual must possess a legitimate expectation of privacy in the area searched or property seized. *Rakas,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387. The United States Supreme Court has developed a two-step analysis for determining whether a legitimate expectation of privacy exists:

> [W]hether the individual has exhibited a subjective expectation; and whether such subjective expectation, viewed objectively, is justifiable under the circumstances.

*United States v. Thornley,* 707 F.2d 622, 624 (1st Cir.1983) (citing *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)).

In the case at hand, we cannot say that Letkeman possessed a reasonable expectation of privacy in the vehicle. The record indicates that Letkeman was a passenger in the vehicle and did not assert an ownership or possessory interest in the vehicle. A mere passenger in a vehicle generally does not have the requisite expectation of privacy to raise the issue of the legality of the vehicle's search. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

Letkeman also claims ownership of the marijuana seized from the vehicle and believes that such ownership in the property seized confers standing. The ownership and possession of seized property is not dispositive upon the issue of expectation of privacy; rather, such are simply factors to be considered. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

In this case, the seized property was wrapped bricks of marijuana. These bricks were hidden in the vehicle's rear storage compartments. Applying the two-part analysis for determining whether an expectation of privacy existed, we believe Letkeman satisfied the first part because it is uncontroverted he possessed a subjective expectation of privacy in the marijuana. However, the second part of the test requires that the subjective expectation of privacy be objectively reasonable under the circumstances.

The facts reveal that Letkeman was only a passenger in the vehicle and did not have control over its contents. Specifically, it appears that Letkeman did not possess the legal right to exclude third parties from exercising possession or control over the vehicle or its contents. Moreover, the marijuana bricks were not concealed by Letkeman in luggage or other baggage. Rather, the bricks were simply hidden in the vehicle's rear storage compartments. Considering the unique circumstances of this case, we cannot say Letkeman possessed an objectively reasonable expectation of privacy in the seized marijuana.

---

1. After submitting the appellate brief, counsel for Heinrich Letkeman, Rodney McDaniel, was suspended from the practice of law by order of the Kentucky Supreme Court. Having failed to secure substitute counsel, Letkeman now proceeds *pro se* in this appeal.

In sum, we are of the opinion that Letkeman did not possess the requisite expectation of privacy to establish standing to contest the legality of the vehicle's stop or of the marijuana's seizure.

■ Letkeman also argues that his detention following the vehicle's stop was unreasonably long and constituted a violation of the Fourth Amendment of the United States Constitution and Section 10 of the Kentucky Constitution. Letkeman particularly maintains he was detained by Trooper Devasher for some thirty minutes while waiting for another trooper to arrive. Letkeman contends that Trooper Devasher lacked reasonable suspicion of criminal activity to warrant the thirty-minute detention and that the citation took only a few minutes to issue.

In *Ohio v. Robinette*, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996), the Supreme Court recognized that the legality of a continued detention following a stop for a traffic violation is a question of reasonableness. It has been held:

> Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention. They do not signal or facilitate oppressive police tactics that may burden the public— for all suspects (even the guilty ones) may protect themselves fully by declining to answer. Nor do the questions forcibly invade any privacy interest or extract information without the suspects' consent.

*United States v. Burton*, 334 F.3d 514, 518 (6th Cir.2003).

In the case *sub judice*, the record indicates that Trooper Devasher questioned Letkeman and Garcia, checked the vehicle's registration and license plate, and checked Garcia's out-of-state driver's license. Upon the whole, we believe the continued detention of Letkeman for some thirty minutes after the initial traffic stop was reasonable.

■ Letkeman additionally maintains the statement he made to police following his arrest should be suppressed.[2] Specifically, Letkeman alleges he did not voluntarily and knowingly waive his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Letkeman contends he was advised of his *Miranda* rights in English but that he "did not understand English sufficiently to make a valid waiver of these important rights." Letkeman Brief at 19. Letkeman claims his primary language is Spanish.

In its order denying Letkeman's motion to suppress, the circuit court found:

> Detective Brennan testified that Letkeman spoke English to him, answered everything asked of him, and he and Letkeman could communicate with each other. (Comm. Br. at 13). Trooper Devasher testified that Letkeman answered "yes" when Devasher asked him if he understood his *Miranda* rights. Devasher also testified that Letkeman knew English better than he originally led the trooper to believe. Though Letkeman testified that he does not speak English and did not understand everything that Trooper Devasher said, the Court finds in favor of the Commonwealth based on the testimony by Brennan and Devasher.

---

**2.** Letkeman also contends his statements to police following his arrest should be suppressed because of the wrongful stop and warrantless search of the vehicle and the prolonged detention following the traffic stop. As Letkeman lacks standing to contest the stop and seizure and his detention was reasonable, we summarily reject this contention.

Based upon the testimony of Detective Brennan and Trooper Devasher, we conclude the circuit court's findings that Letkeman understood English and understood he was waiving his rights under *Miranda* were not clearly erroneous. *See Stewart,* 44 S.W.3d 376.

For the foregoing reasons, Appeal No.2004–CA–002271–MR is reversed and this cause remanded for proceedings not inconsistent with this opinion, and Appeal No.2004–CA–002283–MR is affirmed.

ALL CONCUR.