*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0434p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LOUISVILLE/JEFFERSON COUNTY METRO
GOVERNMENT and LEXINGTON-FAYETTE
URBAN COUNTY GOVERNMENT,
    *Plaintiffs-Appellants,*

　　　*v.*

HOTELS.COM, L.P. et al.,
    *Defendants-Appellees.*

Nos. 08-6302/6303

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 06-00480—Thomas B. Russell, District Judge.

Argued: October 14, 2009

Decided and Filed: December 22, 2009

Before: GILMAN and GIBBONS, Circuit Judges; ANDERSON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Anthony G. Raluy, FOLEY, BRYANT, HOLLOWAY & RALUY, Louisville, Kentucky, for Appellants. Darrel J. Hieber, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Los Angeles, California, for Appellees. **ON BRIEF:** Anthony G. Raluy, Irvin Daniel Foley, FOLEY, BRYANT, HOLLOWAY & RALUY, Louisville, Kentucky, Michael J. O'Connell, JEFFERSON COUNTY ATTORNEY'S OFFICE, Louisville, Kentucky, Rochelle E. Boland, Leslye M. Bowman, LEXINGTON-FAYETTE URBAN COUNTY GOVERNMENT DEPARTMENT OF LAW, Lexington, Kentucky, for Appellants. Darrel J. Hieber, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Los Angeles, California, Karen L. Valihura, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware, William Jay Hunter, Jr., Timothy J. Eifler, David S. Sullivan, STOLL KEENON OGDEN, Louisville, Kentucky, Marcus G. Mungioli, Brian S. Stagner, KELLY HART & HALLMAN LLP, Forth Worth, Texas, for Appellees.

_____

[*] The Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.  Hotels.com, L.P. and various other online travel companies (OTCs) engage in a business practice whereby they agree to pay lodging establishments a contractually agreed room rate if the OTCs find customers to rent the available rooms.  Customers pay to rent the rooms at a higher "retail" rate charged by the OTCs, which then remit the original negotiated price to the lodging establishments along with any taxes applicable to the negotiated "wholesale" price.

Asserting that the OTCs are violating local tax ordinances by failing to pay a transient room tax on the difference between the two rates, the Louisville/Jefferson County Metro Government (LJCMG) and the Lexington-Fayette Urban County Government (LFUCG) sued the OTCs in federal court.  The district court granted the OTCs' motion to dismiss, reasoning that because the OTCs lack ownership and physical control over the rooms rented, they do not constitute "like or similar accommodations businesses" within the purview of the ordinances in question.  As a result of this decision, the counties are not collecting transient room taxes on the difference between the two rates.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**I.  BACKGROUND**

**A.    Factual background**

The Kentucky Enabling Acts authorize counties to impose a  transient room tax on "the rent for every occupancy of a suite, room, or rooms, charged by all persons, companies, corporations, or other like or similar persons, groups or organizations doing business as motor courts, motels, hotels, inns or like or similar accommodations businesses." Ky. Rev. Stat. Ann. § 91A.390(1).  Money collected from the tax is used to establish convention and tourist commissions "for the purpose of promoting

convention and tourist activity."  Ky. Rev. Stat. Ann. § 91A.350(1).  Pursuant to this authority, the two counties in question enacted ordinances imposing a transient room tax and adopted the language of the Enabling Acts to describe the category of businesses to be taxed.  *See* Louisville/Jefferson County, Ky., Code of Ordinances § 121.01(A); Lexington-Fayette Urban County, Ky., Charter of Code of Code of Ordinances § 2-172(a).

According to the counties' allegations, the OTCs contract with hotels for rooms at a discounted "wholesale" price.  The OTCs then offer the rooms for rent at a "retail" price that is higher than the negotiated wholesale rate and purport to include "tax recovery charges and fees."  When a customer books a room using an OTC, the company remits to the appropriate hotel both the negotiated wholesale price and the taxes due on that lesser amount.  The counties contend that this arrangement deprives them of the taxes owed on the difference between the retail price and the wholesale price.

**B.    Procedural background**

In September 2006, LJCMG sued the OTCs in federal district court for the alleged violation of its transient room tax ordinance, seeking declaratory relief and damages.  Jurisdiction was based on diversity of citizenship under 28 U.S.C. § 1332(a). LFUCG filed an intervenor complaint approximately one-and-a-half years later, asserting the same cause of action and seeking similar relief.

The OTCs twice moved to dismiss the claim brought against them.  They first filed a motion to dismiss LJCMG's complaint prior to the addition of LFUCG to the lawsuit, asserting that they were not "motor courts, motels, hotels, inns or like or similar accommodations businesses" for the purposes of LJCMG's ordinance, and that LJCMG's proposed construction of the ordinance converted the enactment into an impermissible excise tax under the Kentucky Constitution.  In denying the motion, the district court reasoned that LJCMG's allegation that the OTCs leased rooms at a marked-up retail price was sufficient at the pleading stage to qualify the companies as "like or similar accommodations businesses" under the ordinance.  Shortly thereafter, the OTCs

filed a motion for reconsideration and, while this motion was pending, LFUCG filed its intervenor complaint.

The district court granted the OTCs' second motion and reversed its earlier holding. It determined that the OTCs are not "like or similar" to "motor courts, motels, hotels, or inns" because they "have neither ownership, nor physical control, of the rooms they offer for rent." Because the OTCs did not exist at the time the ordinances were written, the court remarked that the Kentucky Enabling Acts "have simply failed to keep up with the times." The court therefore concluded that the OTCs were not subject to the ordinances and that the counties' claims should be dismissed. This timely appeal followed.

## II. ANALYSIS

### A.      Standard of review

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure seeks to have the complaint dismissed based upon the plaintiff's failure to state a claim upon which relief can be granted. The court must "accept all the . . . factual allegations as true and construe the complaint in the light most favorable to the Plaintiff[ ]." *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citation and internal quotation marks omitted). Our review of a district court's grant of a motion to dismiss is de novo. *Id*. at 465-66.

### B.      Overview

The counties' primary contention is that the OTCs constitute "like or similar accommodations businesses" under the ordinances. In addition, LJCMG argues that the district court lacked a proper basis to grant the OTCs' motion for reconsideration and that the court impermissibly made factual findings in ruling on the motion. We will address each issue in turn.

**C.      "Like or similar accommodations businesses"**

To determine whether the OTCs fall under the purview of the ordinances, we begin by analyzing the statutory language.  We must conduct this analysis utilizing Kentucky law because jurisdiction in this case is based on diversity of citizenship.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Essentially, we are obliged to decide the case as we believe the Kentucky Supreme Court would do.  *See Stalbosky v. Belew*, 205 F.3d 890, 893 (6th Cir. 2000) (applying Kentucky's negligent-hiring law in a diversity-of-citizenship case).  We will therefore interpret the ordinances using the framework developed by the Kentucky courts.

Under that framework, "[t]he essence of statutory construction is to ascertain and give effect to the intent of the legislature."  *Hale v. Combs*, 30 S.W.3d 146, 151 (Ky. 2000).  To determine legislative intent, courts should analyze the statutory language and "[r]esort must be had first to the words, which are decisive if they are clear."  *Stephenson v. Woodward*, 182 S.W.3d 162, 170 (Ky. 2005) (alteration in original) (internal quotation marks omitted) (quoting *Gateway Constr. Co. v. Wallbaum*, 356 S.W.2d 247, 249 (Ky. 1962)).  "[S]tatutes must be given a literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required."  *Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky. 2002).

*1.      Plain meaning*

Our initial consideration, therefore, is to determine whether the words of the ordinances reveal the legislature's intent to include the OTCs in the category of "like or similar accommodations businesses."  The counties make three arguments as to why the plain meaning of the ordinances discloses such an intent.  They first contend that, to avoid rendering the phrase "like or similar accommodations businesses" meaningless, it cannot be limited to brick-and-mortar establishments and must include companies such as the OTCs that have only an online presence.  But the phrase still has meaning even if it is construed to exclude online businesses. Bed and breakfasts, hostels, and rooming

houses, for example, are not motor courts, motels, hotels, or inns, yet they presumably would fall into the "like or similar accommodations businesses" category.

Second, the counties argue that the phrase "like or similar" indicates a legislative intent to broaden the category. That observation is surely correct, but it provides little guidance as to *how* broadly to construe the category and whether the OTCs should be included.

Finally, the counties emphasize the statutory language directing that the tax be levied on "the rent for every occupancy" of a room charged by accommodations businesses, and they contend that the full retail price constitutes the rent paid to occupy a room. The counties' focus on the amount paid by the ultimate customer is not conclusive, however, because the tax is not assessed on the occupant of a room, but rather on the entities doing business as hotels and the like. Accordingly, none of the counties' arguments regarding the plain meaning of the ordinances is persuasive.

Nor does the expressed purpose of the Enabling Acts provision authorizing the imposition of the transient room tax provide clarification. According to the statute, a portion of the money collected from the transient room tax "may be used to finance the cost of acquisition, construction, operation, and maintenance of facilities useful in the attraction and promotion of tourist and convention business." Ky. Rev. Stat. Ann. § 91A.390(3). The remainder of the funds is to be used to "establish tourist and convention commissions for the purpose of promoting convention and tourist activity." Ky. Rev. Stat. Ann. § 91A.350(1).

As described by the Kentucky Court of Appeals (the highest court in the state until 1976), the statute "did two things: (1) it authorized the creation of an administrative agency to promote convention and tourist activity in the county, and (2) it provided for the financing of this activity by the imposition of a room tax upon hotels, motels and the like." *Second Street Props., Inc. v. Fiscal Court of Jefferson County*, 445 S.W.2d 709, 714 (Ky. 1969). The Court in *Second Street* noted the existence of a "correlation" between the businesses taxed and the use of the money collected because

hotels and motels in Jefferson County would "specially" benefit from an increase in tourism. *Id.*

This ruling is the basis for the counties' argument that the OTCs will likewise reap the benefits of increased tourism in Louisville and Lexington. Because the OTCs lack any physical presence in these locations, however, they do not "specially" benefit from increased tourism in those cities any more than they would from an increase in tourism in any other part of the country. We thus find unpersuasive the counties' argument that the purpose of the Enabling Acts supports subjecting the OTCs to the transient room tax.

The OTCs, on the other hand, attempt to bolster the decision of the district court by noting that in 2009 the Kentucky General Assembly rejected a proposed bill that would have extended the category of entities subject to the transient room tax to include "other entities that may broker or facilitate the transaction." H.B. 482, 2009 Gen. Assem., Reg. Sess. (Ky. 2009). This proposed amendment is not conclusively in the OTCs' favor, however, because the legislature might have simply been trying to make explicit what it thought was clear from the statute as presently worded—that OTCs are "like or similar accommodations businesses." More likely, though, is the legislature's recognition that the express language of the statute as it is written does not reach the OTCs.

Elsewhere in the Enabling Acts, the Kentucky legislature defined "hotel" to mean "any hotel, motel, inn, or other establishment which offers overnight accommodations to the public for hire." Ky. Rev. Stat. Ann. § 243.055(1)(a). This definition is limited, however, to a separate section of the Acts regulating licenses for hotels to sell alcohol as part of their in-room service. *See* Ky. Rev. Stat. Ann. § 243.055(1)(a). We therefore find the definition unhelpful in resolving the instant dispute. Perhaps, as the counties suggest, the legislature did not intend to restrict the transient room tax to brick-and-mortar businesses as it did with alcohol licenses and therefore deliberately omitted the word "establishment" from the taxing provisions. But given that the legislature defined

"hotel" in a section completely separate from that granting the counties their taxing authority, this observation is not persuasive as to the meaning of the statutory language in question.

Kentucky caselaw provides a modicum of guidance as to the proper interpretation of the statute. Specifically, three Kentucky appellate cases have analyzed the transient room tax at issue. In *Second Street*, the Kentucky Court of Appeals upheld the constitutionality of the JLCMG ordinance, concluding that the avowed purpose of the Enabling Acts provision—promoting convention and tourist activities—was "sufficiently definite to circumscribe the permitted proper functions of the administrative agency." 445 S.W.2d at 713. Finding a reasonable basis for subjecting "hotels, motels and the like" to the tax, the Court reasoned that there was a "definite correlation between the purpose of the tax and the business of the selected taxpayer" because "hotels and motels will specially benefit from the expenditure of this tax revenue." *Id.* at 713-14. *Second Street*'s analysis is of limited help on the issue before us, however, and at most it reveals a preference for a narrow reading of the statute given the Court's concern to limit the imposition of the tax to a well-defined category of businesses.

Two years later, the Kentucky Court of Appeals addressed a constitutional challenge to a transient room tax imposed by the City of Lexington. The Court held that there was no reasonable basis for singling out hotels and motels to pay the tax and rejected the city's justification for this categorization—that hotels and motels use city services to a greater degree than other businesses—as unpersuasive. *City of Lexington v. Motel Developers, Inc.*, 465 S.W.2d 253, 258-59 (Ky. 1971). (Lexington's tax ordinances have since been amended to limit the use of the transient room tax to the funding of convention and tourist activities.) As in *Second Street*, the Court repeatedly referred to "hotels and motels" as well as "hotel and motel owners, and others similarly engaged" when identifying the businesses subject to the tax. *Id.* at 254-55, 258-59. Nevertheless, neither *Second Street* nor *Motel Developers* provide significant guidance on the issue of how broadly to construe "like or similar accommodations businesses."

*Lexington Relocation Services, LLC v. Lexington-Fayette Urban County Government*, No. 2003-CA-001593-MR, 2004 WL 1418184 (Ky. Ct. App. June 25, 2004), is more directly on point. In that case, Lexington Relocation Services (LRS) leased or owned units in various Lexington apartment complexes and rented them, fully furnished, to corporate employees who had relocated to Lexington or were on temporary assignment there. *Id*. at *1. The court held that LRS qualified as an "accommodations business" and was therefore subject to the transient room tax because a significant fraction of its rentals "supply short-term accommodations suitable for visitors." *Id.* at *2. Moreover, the court noted that LRS held "itself out as operating, and does operate," in the short-term accommodations market. *Id*.

Unlike LRS, the OTCs in the present case do not physically control or furnish the rooms they advertise. The OTCs also do not "supply" or "provide" rooms to visitors in the same manner that LRS does because they take no part in making the room physically available. Thus, the Kentucky Court of Appeals's interpretation in *Lexington Relocation Services* provides the most support, by way of contrast, for the OTCs' argument that they are not subject to the transient room tax.

Overall, the wording of the ordinances, based on the language used and what legislative intent is discernable, is inconclusive as to whether the OTCs constitute "like or similar business accommodations." Kentucky appellate caselaw, however, suggests that they do not fall into this category.

### 2.    *Further interpretation*

Where legislation lacks plain meaning, Kentucky courts are instructed to "resort to the canons or rules of construction." *King Drugs, Inc. v. Commonwealth*, 250 S.W.3d 643, 645 (Ky. 2008). Having found no plain meaning of the statute in question, the district court concluded that the principle of *ejusdem generis* should apply. The rule states that

> where, in a statute, general words follow or precede a designation of particular subjects or classes of persons, the meaning of the general

words ordinarily will be presumed to be restricted by the particular
designation, and to include only things or persons of the same kind, class,
or nature as those specifically enumerated, unless there is a clear
manifestation of a contrary purpose.

*Steinfeld v. Jefferson County Fiscal Court*, 229 S.W.2d 319, 320 (Ky. 1950).

Applying this principle, the district court determined that the phrase "like or similar accommodations businesses" should be restricted by the four types of businesses listed immediately prior to this phrase—i.e., motor courts, motels, hotels, and inns. *See Garcia v. Commonwealth*, 185 S.W.3d 658, 664 (Ky. Ct. App. 2006) (applying the principle of *ejusdem generis* to conclude that the term "other nuisance" is limited to nuisances similar to noise and smoke because it was preceded by those words in the statute). The district court reasoned that the OTCs are not like or similar to the listed types of businesses because they "have neither ownership, nor physical control, of the rooms they offer for rent." According to the counties, this reading impermissibly adds the terms "owner" and "physical establishment" to the ordinances. We are unpersuaded by this argument, however, because the notions of ownership and physical control over the rooms for rent are simply shared characteristics of motor courts, motels, hotels, and inns. The district court thus properly applied the principle of *ejusdem generis* to the ordinances in question.

When faced with the same issue, the United States Court of Appeals for the Fourth Circuit similarly interpreted a county ordinance in North Carolina as excluding OTCs from the transient room tax. There, the ordinance at issue applied to "[o]perators of hotels, motels, tourist homes, tourist camps, and similar type businesses." *Pitt County v. Hotels.com, L.P.*, 553 F.3d 308, 313 (4th Cir. 2009) (alteration in original). The court applied the principle of *ejusdem generis* to conclude that the OTCs were not "similar type businesses" because the specifically enumerated businesses preceding the expansive phrase were physical establishments that "provide lodging to patrons on site." *Id.* Because the OTCs did not physically provide the rooms, the court concluded that they were outside the parameters of the statute. *Id.*

The counties assert that this interpretation of the statute leads to the "absurd result" that a county would receive less tax money if a customer books a hotel room through an OTC than if the room is booked directly through a lodging establishment. This potential loophole has been recognized by several district courts in other circuits. *See, e.g.*, *City of Charleston v. Hotels.com, L.P.*, 586 F. Supp. 2d 538, 543 (D.S.C. 2008) (observing that exempting OTCs from a similar tax "would lead to the absurd result of a hotel being able to establish and operate a wholly-owned subsidiary corporation in another jurisdiction which handled all of its reservations and booking, and be completely immune from municipal accommodations taxes"), *holding limited by Pitt County*, 553 F.3d at 313; *City of Fairview Heights v. Orbitz, Inc.*, No. 05-CV-840, 2006 WL 6319817 (S.D. Ill. July 12, 2006) (reasoning that a narrow interpretation of a tax ordinance "would open up a potentially gaping loophole" whereby "a hotel operator could simply incorporate a shell entity or make some other similar arrangement, rent the hotel rooms to that entity for a nominal amount, and then re-rent the rooms to consumers, who would be taxed only on the nominal sum paid by the side entity to the operator").

We reject the counties' "absurdity" argument, however, in part because the Kentucky General Assembly, not the court, is the proper entity to close any such potential loophole. *See Camera Ctr., Inc. v. Revenue Cabinet*, 34 S.W.3d 39, 45 (Ky. 2000) ("[T]he legislature can easily choose to close a tax exemption window of opportunity either in whole or in part."). Furthermore, unlike in the hypotheticals set forth above, none of the OTCs here are under common ownership with the physical establishments that control the rooms.

Moreover, the recent decision of the Georgia Supreme Court in *Expedia, Inc. v. City of Columbus*, 681 S.E.2d 122 (Ga. 2009), is instructive by way of the contrasting language in the city ordinance before the state court. The City of Columbus ordinance assesses a tax on "the charge to the public" for a room, causing the Court to conclude that because "Expedia is not the end-consumer, is not a member of the public at large, and is not the occupant of the hotel room," the tax targets the full rate paid by the customer. *Id.* at 128. We agree with that reasoning, but the lack of equivalent language

in the ordinances before us leads to the opposite result. In other words, imposing the transient room tax based on "the charge to the public" provides clarity that is sorely lacking in the ordinances at hand.

Finally, any doubt as to whether the OTCs are "like or similar accommodations businesses" must be resolved in favor of the OTCs under Kentucky law. Kentucky's highest court has stated that

> [t]axing laws should be plain and precise, for they impose a burden upon the people. That imposition should be explicitly and distinctly revealed. If the Legislature fails so to express its intention and meaning, it is the function of the judiciary to construe the statute strictly and resolve doubts and ambiguities in favor of the taxpayer and against the taxing powers.

*George v. Scent*, 346 S.W.2d 784, 789 (Ky. 1961). "This is particularly so in the matter of pointing out the subjects to be taxed." *Id.* Because the counties' interpretation of the ordinances in question is at best doubtful, we are obligated under Kentucky law to resolve the doubt "in favor of the taxpayer," i.e., the OTCs.

**D.     District court's grant of the OTCs' motion for reconsideration**

In addition to appealing the determination that the OTCs are not "like or similar accommodations businesses," LJCMG asserts that the district court had no proper basis for granting the OTCs' motion for reconsideration. But "courts will find justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare*, 89 F. App'x 949, 959 (6th Cir. 2004). In light of the foregoing analysis, the district court properly concluded that it had committed a clear error of law when it failed to exempt the OTCs from the transient room tax the first time around. We are therefore unpersuaded by LJCMG's argument on this point.

LJCMG also contends that the district court erred by making a factual finding that the OTCs do not exercise physical control over the rooms they rent. By doing so,

LJCMG asserts, the court failed to resolve all factual disputes in LJCMG's favor on a motion to dismiss. *See Great Lakes Steel, Div. of Nat'l Steel Corp. v. Deggendorf*, 716 F.2d 1101, 1104-05 (6th Cir. 1983) ("A motion to dismiss . . . [for] failure to state a claim upon which relief can be granted must be viewed in the light most favorable to the party opposing the motion."). In making this argument, LJCMG relies on *City of San Antonio v. Hotels.com*, No. SA-06-CA-381-OG, 2007 WL 1541184 (W.D. Tex. March 20, 2007). The court in that case denied a motion to dismiss filed by the OTCs because there was a factual dispute as to whether the OTCs exercised control over the rooms. *Id*. at \*3. But the court also noted that the city had alleged facts relating to the issue of control. *Id.* In contrast, the counties here have not alleged that the OTCs have any physical control over the rooms. There is accordingly no factual dispute to be resolved in the counties' favor. (We note, by the way, that a jury verdict was reached in October 2009 in the *City of San Antonio* case, with the jury concluding that, under the terms of San Antonio's tax ordinance, the OTCs exercise control over the hotel rooms they rent. But that ordinance, because it imposes an excise tax on the price a transient pays to occupy a hotel room, bears little resemblance to the ones at issue in the present case.)

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.