RENDERED: JANUARY 21, 2010
TO BE PUBLISHED

# Supreme Court of Kentucky

2008-SC-000730-DG

DATE 2/11/10 *Kelly Klabor D.C.*

COMMONWEALTH OF KENTUCKY                                    APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2007-CA-002033-MR
UNION CIRCUIT COURT NO. 07-CR-00012

LESLIE PRIDE                                                          APPELLEE

## OPINION OF THE COURT BY JUSTICE VENTERS

### REVERSING AND REMANDING

Appellant, Commonwealth of Kentucky, appeals from a Court of Appeals decision reversing a July 5, 2007 order of the Union Circuit Court which denied Appellee Leslie Pride's motion to suppress evidence obtained during a search pursuant to a warrant. The Court of Appeals held that the motion to suppress should have been granted because it found there was no probable cause to support the warrant. We granted discretionary review to look at whether the Court of Appeals used the correct standard to review the existence of probable cause, whether the facts stated in the affidavit provided to the warrant-issuing judge established probable cause, and whether if the warrant was not supported by probable cause, the trial court properly denied the motion to suppress because the police acted in good faith. We also address

Appellee's argument that the affidavit supporting the warrant set forth factual conclusions based upon flawed electrical usage statistics. We reverse the Court of Appeals because it applied an incorrect standard of review for searches conducted pursuant to a warrant.

On November 9, 2006, the Kentucky State Police sought a search warrant for Appellee's residence. The search warrant affidavit, given by Detective Sean McKinney, stated the following in support of the warrant:

> On the 6th day of September, 2006, at approximately 11:00 a.m., affiant received information from: A Confidential Source of illegal narcotic activities in the Commonwealth of Kentucky. The Confidential Source stated that he knew a man by the name of Leslie Pride and that Pride was selling marijuana. The Source stated that Pride lived in Union County and told him that he had 240 female marijuana plants and priced the marijuana at $600.00 per quarter pound. The Source stated that he knew Pride from previous employment and that the information received was told to him by Pride last summer (2005). The Affiant states that the Confidential Source has provided information on at least 3 marijuana investigations and that that information has resulted in ongoing criminal investigations and controlled purchases (not related to Pride). The Confidential Source has proven to be a reliable source of narcotics related information to the Kentucky State Police.
>
> Acting on the information received, affiant conducted the following independent investigation: Affiant states he and Det. Matt Conley through vehicle and driver's license checks confirmed that Leslie Pride lived in Union County, KY and resided at 681 SR 365 in the Sturgis area. Affiant states that on November 7, 2006 Det. Conley and Det. Louis Weber drove back to the residence and obtained information from it and two comparison homes in the area for a utility records subpoena. Affiant states that he went to the Union County PVA Office and obtained property cards and information on three residences for comparison. Affiant states that he chose the two comparison homes based on geographic location, same utility company service, and being similar structures in both construction and size. Affiant states that he served a subpoena on Kentucky

Utilities on November 7, 2006 for the utility records on all three residences. Affiant states that on November 8, 2006 he received faxed copies of those records from Kentucky Utilities. Affiant states that he provided those records to Det. Weber for review and graphing. Det. Weber is assigned to the Kentucky State Police Drug Enforcement/Special Investigations Section and has investigated several dozen indoor marijuana grow operations and has created a graphing system for the utility records. Affiant states that Det. Weber prepared the graphs for 2005 and 2006, and prepared a structural comparison on all three residences. Det. Weber concluded that based on the extremely high electric usage and indicative spiking of electric at 681 ST RT 365, it was his opinion that the records were consistent with an indoor marijuana grow. Det. Weber consulted with retired KSP Det. Mark Moore on November 9, 2006 regarding this investigation. Det. Moore, who is now assigned as a KSP Drug Task Force Officer, was assigned to the KSP Marijuana Operations Section from 1995 until his retirement in 2003. Det. Moore was provided copies of the graphs and structural comparison worksheet. Det. Moore also concluded that based on his experience and training, that the extremely high electrical usage was indicative of and consistent with an indoor marijuana grow . . . .

Affiant further states that he has checked Leslie Pride's criminal history and determined that he was charged and convicted in Union County in 1995 for Trafficking in a Controlled Substance 1st Degree and sentence to 10 years. Affiant further states that Pride was charged and convicted in Union County in 1995 for 2-counts of Trafficking Controlled Substance 1st degree and possession of a handgun by a convicted felon. Pride was sentenced to another 10 years to run concurrent with the previous indictment . . . .

Based on the above affidavit, a search warrant was issued and Appellee's residence was searched. Among the items seized during the search were fifty-four one-gallon plastic storage bags of marijuana, an Army duffle bag containing marijuana, twenty-six pounds, ten ounces of loose, unpackaged marijuana, and various items used to cultivate and process marijuana. Based on the evidence obtained, the Union County Grand Jury indicted Appellee for

trafficking in marijuana (over five pounds), second or greater offense, use/possession of drug paraphernalia, first offense, and being a second-degree persistent felony offender.

Appellee filed a motion to suppress the evidence obtained during the search. A suppression hearing was held on April 9, 2007. Appellee argued that the affidavit failed to present probable cause to issue a search warrant because: 1) the affidavit did not indicate there was marijuana located at Appellee's house; 2) the information provided by the confidential informant was stale because it referred to alleged crimes which occurred over one year prior; 3) the affidavit did not reflect that the confidential informant's reliability had been established by the time the warrant was requested; 4) his prior criminal history did not establish that there was current illegal activity; and 5) the electricity usage comparison used by the police was unreasonable and conducted without any objective standards.

In support of his argument against the electricity usage comparison, Appellee presented testimony from a Kentucky Utilities energy analyst who testified that electricity usage at Appellee's house was within normal limits. The energy expert made this determination by interviewing Appellee's wife regarding the family's energy usage. Appellee also presented testimony from Kentucky State Police Detective Moore, who testified that had he known about the number of appliances at Appellee's house, he would have changed his initial belief that the house was the site of a marijuana growing operation.

4

Appellee further argued that the electricity comparison was flawed because the two comparison houses had markedly different inhabitants than Appellee's house. Five family members of varying ages lived at Appellee's house, while one of the comparison houses had two elderly residents and the other was vacant for several months during the period of review. Based on this, Appellee argued that not only was there no objective standard of review used by police in reviewing the electricity usage, but that the final report was misleading.

Using the standard provided in Illinois v. Gates, 462 U.S. 213 (1983), the circuit judge denied Appellee's motion in a fifteen-page order. The circuit judge found that each element contained in the affidavit was individually inadequate to issue the warrant, but that collectively, the "totality of the circumstances" provided the warrant-issuing judge a "substantial basis for . . . conclud[ing]" that probable cause existed. The circuit judge concluded that the informant's credibility was adequately established in the month prior to the issuance of the search warrant by other tips he provided and by the police officer's knowledge of Appellee's criminal background. Finally, the circuit judge concluded that the methods the police used for the electricity comparison, despite the imperfections revealed by the hindsight of subsequent analysis, were reasonable and objective, were not misleading, and appeared to be indicative of a marijuana growing operation.

After the suppression hearing, Appellee entered a conditional guilty plea to one count of trafficking in marijuana over five pounds, first offense, and one

count of use/possession of drug paraphernalia, first offense pursuant to a plea agreement with the Commonwealth, reserving the right to appeal the denial of his suppression motion. Appellee received a sentence of six-years' imprisonment.

The Court of Appeals reversed the circuit judge's order denying Appellee's suppression motion using a two-step test to review the suppression hearing: 1) whether the circuit court's findings of fact are supported by substantial evidence; and 2) a de novo review of those factual findings to determine whether probable cause existed as a matter of law. The standard of review used by the Court of Appeals was provided by Ornelas v. United States, 517 U.S. 690 (1996); Commonwealth v. Banks, 68 S.W.3d 347, 349 (Ky. 2001); Garcia v. Commonwealth, 185 S.W.3d 658, 661 (Ky. App. 2006); and Stewart v. Commonwealth, 44 S.W.3d 376, 380 (Ky. App. 2000) – cases all dealing with warrantless searches. Using that standard, the Court of Appeals found that probable cause did not exist to issue the warrant because the information provided by the confidential informant was stale and the electricity comparison was flawed. The Court of Appeals believed that the two houses used in the electricity usage comparison were too dissimilar to Appellee's house to fairly conclude that Appellee's electricity usage was indicative of illegal conduct within the house. Finding that the Court of Appeals used the wrong standard to review the existence of probable cause, we reverse.

6

## I. THE STANDARD FOR REVIEWING THE ISSUANCE OF A SEARCH WARRANT IS PROVIDED BY ILLINOIS v. GATES AND WAS ADOPTED BY THIS COURT IN BEEMER v. COMMONWEALTH, 665 S.W.2d 912 (KY. 1984).

Appellant's main argument is that the two-step test used by the Court of Appeals is the incorrect standard to review the trial court's denial of the motion to suppress. Appellant argues that the correct standard to review suppression motions for searches conducted pursuant to a warrant was used by the circuit court; i.e., the "totality of the circumstances" test provided in Gates, 462 U.S. 213. We adopted the Gates "totality of the circumstances" test in Beemer v. Commonwealth. Notably the Court of Appeals opinion did not cite to Gates or Beemer, but did make vague references to the "totality of the circumstances" test. However, the main test the Court of Appeals cited to is generally used to review warrantless searches and Terry stops. Ornelas, 517 U.S. at 690; Banks, 68 S.W.3d at 349; Garcia, 185 S.W.3d at 661; and Stewart, 44 S.W.3d at 380. Because this case involves a search conducted pursuant to a warrant, we agree that the Court of Appeals applied an incorrect standard.

In Gates, the United States Supreme Court held that the proper standard to review a decision to issue a search warrant is to look at the "totality of the circumstances" surrounding the warrant request.

> The task of the [warrant] issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a

reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

Id. at 238-239; see also Beemer, 665 S.W.2d at 914. Gates, holding that a *de novo* review of the facts contained in the affidavit supporting a search warrant is inappropriate and tends to lead to overly technical analysis, stated "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review". Id. at 236; see also Massachusetts v. Upton, 466 U.S. 727, 728 (1984) ("Last term, in Illinois v. Gates, we held that the Fourth Amendment's requirement of probable cause for the issuance of a search warrant is to be applied, not according to a fixed and rigid formula, but rather in light of the 'totality of the circumstances' made known to the magistrate. We also emphasized that the task of the reviewing court is not to conduct a *de novo* determination of probable cause.") (citation omitted). "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" Gates, 462 U.S. at 236 (citing Spinelli v. United States, 393 U.S. 410, 419 (1969)); see also Beemer, 665 S.W.2d at 914. The great deference to the decision making ability of the warrant-issuing judge stems from the preference we have for searches conducted pursuant to a warrant rather than warrantless searches. Gates, 462 U.S. at 236.

Our preference for searches pursuant to a warrant is part of the rationale for the requirement that warrantless searches are reviewed *de novo*. Ornelas, 517 U.S. at 698-699. It is reasoned that the stricter *de novo* standard for

8

warrantless searches will encourage police officers to seek out a warrant prior to executing a search, because the searches pursuant to a warrant are reviewed under the less strict standard provided by Gates. Ornelas, 517 U.S. at 698-699 (stating that to implement a Gates "totality of the circumstances" standard for warrantless searches would "eliminate the incentive" for police to seek warrants). Thus the Court of Appeals' decision in this matter applied the standard for warrantless searches, which are reviewed pursuant to Ornelas, rather than the "totality of the circumstances" test created by Gates and adopted by this Court in Beemer.

Thus, the trial court judge faced with a motion to suppress evidence obtained pursuant to a search warrant should apply the Gates standard, and determine whether under the "totality of the circumstances" presented within the four corners of the affidavit, a warrant-issuing judge had a substantial basis for concluding that probable cause existed. When addressing a motion to suppress evidence resulting from a warrantless search, the trial judge should apply the stricter *de novo* test from Ornelas.

The proper test for appellate review of a suppression hearing ruling regarding a search pursuant to a warrant is to determine first if the facts found

by the trial judge are supported by substantial evidence[1], RCr 9.78, and then to determine whether the trial judge correctly determined that the issuing judge did or did not have a "substantial basis for . . . conclud[ing]" that probable cause existed. Gates, 462 U.S. at 236; see also Beemer, 665 S.W.2d at 915 (applying the "substantial basis" test to the decision of the warrant-issuing judge to determine if there was probable cause). In doing so, all reviewing courts must give great deference to the warrant-issuing judge's decision.[2] Gates, 462 U.S. at 236. We also review the four corners of the affidavit and not extrinsic evidence in analyzing the warrant-issuing judge's conclusion. Commonwealth v. Hubble, 730 S.W.2d 532 (Ky. App. 1987). The proper test on appeal to review a ruling on a warrantless search is the one the Court of Appeals used in this matter. First, review the factual findings of the circuit judge to see if they are supported by substantial evidence, RCr 9.78, and then review the ruling on the motion to suppress *de novo* to see whether the decision was correct as a matter of law. Ornelas, 517 U.S. at 698-699.

---

[1] Ordinarily, when a search warrant has been obtained, there is no reason for an evidentiary hearing to determine whether the facts alleged in the affidavit are actually true. However, when it is alleged that police officers procuring the warrant-included intentionally or recklessly false statements or purposefully or recklessly omitted material facts, an evidentiary hearing is necessary to determine whether the allegations are true and, if so, whether probable cause exists without the corrupted facts or with the inclusion of the improperly omitted facts. See Guth v. Commonwealth, 29 S.W.3d 809, 810 (Ky. App. 2000).

[2] Appellant further argues that Commonwealth v. Smith, 898 S.W.2d 496 (Ky. App. 1995), improperly adopts a *de novo* standard of review for all searches conducted with a warrant. However, we do not read Smith in that manner because it addresses the level of specificity necessary in a warrant required to allow a search of a multi-unit apartment building. Id. at 501. Thus, this case does not deal with the situation found in Smith.

## II. THE AFFIDAVIT REFLECTED FACTS WHICH SUPPORTED A FINDING THAT

## PROBABLE CAUSE EXISTED

Having identified the proper standards with which to review motions to suppress evidence, we now review the circuit court judge's denial of Appellee's motion to suppress evidence obtained pursuant to a search warrant. First, we find that the circuit court judge's overall factual findings were supported by substantial evidence. RCr 9.78. The circuit judge issued an extensive fifteen-page order detailing Appellant and Appellee's arguments. His factual conclusions are supported by the evidence.

Second, using the standard outlined in Gates, we find that the trial court properly concluded that the warrant-issuing judge had a "substantial basis" to issue the warrant due to the facts alleged in the affidavit. "Under the totality of the circumstances" the information presented[3] in the affidavit established probable cause to support the issuance of the warrant.

While Appellee argues that the tip from the confidential informant was stale since it referred to activities a year and a half earlier and thus is unreliable, it is important to note that the police began to investigate Appellee soon after receiving the tip. It is important to note that the police only began to investigate after determining that the confidential informant was reliable, a fact

---

[3] This information includes the tip from the confidential informant that Appellee was trying to sell large amounts of marijuana, Appellee's prior history of drug trafficking, the detective's training and experience with how indoor marijuana growing operations work, and the indication that Appellee was using a large amount of electricity consistent with indoor marijuana cultivation.

critical to the determination of probable cause which was alluded to in the affidavit.

Further, while Appellee argues that the electricity comparison analysis used by police was on its face inadequate, we disagree. The affidavit clearly discusses the methods the police used to compare Appellee's electricity usage to similarly sized near-by houses.

Suspicious electricity usage coupled with other information can be a sufficient basis for finding probable cause. See U.S. v. Kattaria, 503 F.3d 703, 707 (8th Cir. 2007) ("Corroboration from facts such as increased electrical usage may compensate for lack of information about an informant's reliability or the basis of his knowledge."); U.S. v. Clay, 521 F. Supp. 2d 633, 639 (W.D. Mich. 2007) ("Federal courts have noted the relevance and weight of electricity-usage evidence in determining probable cause or the reasonableness of a search"); Colorado v. Quintana, 785 P.2d 934, 939 (Colo. 1990) (holding that dramatic increase in defendant's electricity usage lent credit to informant's statement that defendant was engaged in growing marijuana); Idaho v. Ledbetter, 794 P.2d 278, 281 (Id. 1990) (holding that electricity usage data indicating that defendant was using larger amounts of electricity than were other comparable homes in the area may be used to establish probable cause to search for drugs). The most common method to determine if a suspect's electricity usage is indicative of illegal activity is to compare the electricity bills from the suspect's home with the electricity usage for comparable houses. See

Id. (comparison of defendant's electricity usage with homes in area); Landon v. Alaska, 941 P.2d 186, 189 (Ak. 1997) (using average electricity usage from suspect's house, comparing that usage to previous owners of the house, and then comparing it to average usage at other comparable houses to support probable cause determination); Montana v. Hook, 839 P.2d 1274, 1275-1277 (Mont. 1992) (holding that comparison of suspect's electricity usage to average residential uses of houses with the same type of heating energy source was reasonable and supported probable cause); Ohio v. Gantz, 665 N.E.2d 239, 241-242 (Ohio App. 1995) (indicating that police compared the suspect's electricity use with the two neighboring houses to support probable cause).

Here, after reviewing the methods in which other jurisdictions have dealt with electricity usage comparisons, we cannot find that the electricity usage comparison applied in this case was unreasonable. The record and affidavit reflect that Detective Weber was trained on how to review electricity usage to determine the likely presence of marijuana growing operations. Detective Weber's decision to compare the electricity usage at Appellee's house with houses of comparable size and proximity cannot be seen as unreasonable. See Gantz, 665 N.E.2d at 241-242. We are also unwilling to hold that it is necessary for the police to undertake the kind of comprehensive investigation suggested by Appellee before electricity usage records may be used in an affidavit to support probable cause. Forcing the police to interview the occupants of comparison houses, determine their lifestyle, and then determine

13

in detail the appliances located in each house, could alert suspects to the investigation, and allow them time to destroy evidence. We are aware of no jurisdiction which requires the police to undertake such an in depth investigation before submitting electricity usage data in support of probable cause.

Further, while Appellee complains that one of the comparison houses sat vacant for a period of time and that this skewed the electricity comparison, we disagree. The comparison house only sat vacant for a few months during a two-year sample period. The charts created by Detective Weber and shown at the suppression hearing reflected the near zero electricity usage at the vacant house for that period. We cannot find that Detective Weber deceived the court.

Finally and notably, the affidavit indicates two ways in which Appellee's electricity usage indicated a potential indoor marijuana growing operation. Not only was Appellee's electricity usage higher than the comparables, but there were *electricity usage spikes*, which were indicative of a marijuana growing operation in Detective Weber's experience. Therefore, even if we were to find that the comparison was flawed, the electricity usage spikes from Appellee's house alone were indicative of a marijuana growing operation. Thus, in this matter, we cannot find that the electricity usage comparison was unreasonable. The data generated regarding the electricity usage was properly submitted in the affidavit to support a finding of probable cause.

Based on these facts, we believe there was a sufficient probability of

14

criminal activity occurring at Appellee's house to support probable cause and the issuing of the warrant. See Spinelli, 393 U.S. 410, 419 (1960) (holding that prima-facie evidence of criminal activity is not required to find probable cause, but the probability that criminal activity is afoot). Thus, we find the circuit court's denial of Appellee's motion to suppress was proper.

### III. CONCLUSION

Since the search was supported by probable cause, we need not address whether the good faith exception would have justified the denial of Appellee's motion to suppress on alternative grounds.

Thus, for the foregoing reasons, we reverse the decision of the Court of Appeals and remand this matter to the Union Circuit Court for proceedings consistent with this opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Jack Conway
Attorney General

David Wayne Barr
Assistant Attorney General
Office of Attorney General
Office of Criminal Appeals
1024 Capital Center Drive
Frankfort, Kentucky 40601-8204

COUNSEL FOR APPELLEE:

W. Mitchell Deep
Herbert Randall Redding
King, Deep and Branaman
P O Box 43
Henderson, Kentucky 42419