**COMMONWEALTH of Kentucky,**
**Appellant**

v.

**Henry Lee FOWLER, Jr., Appellee.**

**No. 2011–CA–001581–MR.**

Court of Appeals of Kentucky.

Sept. 21, 2012.

Discretionary Review Denied by Supreme Court May 15, 2013.

Jack Conway, Attorney General of Kentucky, Samuel J. Floyd, Jr., Special Assistant Attorney General, Louisville, KY, for appellant.

Grover S. Cox, Robert W. Charles, Louisville, KY, for appellee.

Before CAPERTON, LAMBERT, and MOORE, Judges.

## OPINION

MOORE, Judge:

The Commonwealth of Kentucky appeals the Jefferson Circuit Court's order granting Henry Lee Fowler, Jr.'s motion to suppress. After a careful review of the record, we reverse and remand for further proceedings because the circuit court's interpretation of KRS[1] 189.380 was incorrect.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the uniform citation that was included in the record, Officer John White of the Louisville Metro Police Department observed the vehicle that Fowler was driving change lanes without using a turn signal. Officer White then stopped the vehicle and, during the stop, Officer White "smelled a strong odor of marijuana coming from inside the vehicle." Fowler informed the officer that "he had some drugs in his pocket." The uniform citation stated that "[i]n the subject[]s right pocket were two separate small plastic bags containing what the subject said to be crack cocaine (2 white rocks). Under the driver[]s seat four small bags of marijuana were found." Fowler was indicted on charges of: (1) Illegal possession of a controlled substance in the first degree, schedule II cocaine; (2) Illegal possession of a controlled substance, schedule I hallucinogen marijuana; (3) Failure to give a proper traffic signal; and (4) Persistent

---

1. Kentucky Revised Statute.

Felony Offender in the first degree (PFO–1st).

Fowler moved to suppress all counts of the indictment on the basis that Fowler believed the stop of his vehicle was pretextual and, therefore, unlawful. Accordingly, Fowler argued that the search and seizure were unconstitutional because there was no probable cause to support the search and seizure.

A suppression hearing was held, and the circuit court entered an order granting Fowler's motion to suppress. In that order, the court included the following findings of fact:

> Officer White testified that ... he observed a vehicle traveling eastbound on Jacob Street in Louisville, Kentucky. The vehicle made a right turn onto Shelby Street, and Officer White followed. Then, without using a signal, the vehicle entered the left lane and, also without signaling, turned left onto Mason Avenue. As a result of failing to use a signal before the lane change, not the left turn, Officer White initiated a traffic stop that culminated in the arrests of the Defendant and his passenger, Tara Edwards, for various drug[-]related offenses.

Regarding Officer White's testimony, the circuit court noted as follows:

> During cross examination, Officer White unequivocally testified that he stopped the vehicle because of the Defendant's failure to use a signal during the lane change, not because the lane change was unsafe, the failure to signal the turn, or because the Defendant was driving through an area known for rampant crime. This is consistent with the account included in the uniform citation. Accordingly, the Court is compelled to conclude that this was the sole reason for the stop.

The circuit court continued with its findings of fact:

> Although her testimony could result in the additional charge of complicity, Ms. Edwards took the stand for the defense. She testified that she owned the vehicle, and on the date of her arrest she was in a relationship with the Defendant. Earlier in the evening before starting work at approximately 6:00 p.m., she consumed a Lortab pill. She received a ride from the Defendant after her shift ended at approximately 2:00–2:30 a.m. Ms. Edwards asserted that the Defendant used his turn signals to change lanes and turn left onto Mason, and never drove in a manner she would describe as reckless. When asked why she would remember such specific details about the Defendant's driving, Ms. Edwards stated that she has a habit of noticing such things. Once stopped, another officer, Mark Oerther, found an additional Lortab pill. Ms. Edwards was charged with possession of a controlled substance and subsequently pleaded guilty to a misdemeanor that has been diverted for two years.
>
> After review, the Court believes Officer White's account of events leading up to the stop and finds that the vehicle's turn signal was not in use when making the lane change. Although the testimony presents a classic "he said/she said" scenario, on balance Ms. Edwards' credibility is compromised for two reasons. First and foremost, it is difficult to believe that someone who admittedly consumed Lortab before a lengthy shift would remember with clarity whether the driver of her vehicle used the turn signal to change lanes. Additionally, Ms. Edwards would benefit from suppression by the foreclosure of additional charges or the possibility of being called to testify at trial. Conversely, Officer White is in the business of noticing traf-

fic violations and suffered no issues with credibility. His testimony was consistent and precise throughout the hearing and he is simply more believable than Ms. Edwards.

(Footnotes omitted).

The court then interpreted KRS 189.380 and concluded that the statute did not require drivers to signal before making a lane change. Rather, the court held that the statute only required drivers to ensure that their lane changes could be completed with reasonable safety before changing lanes. Thus, because the circuit court concluded that no signal was required before changing lanes, the court reasoned that there was no probable cause for the stop of Fowler's vehicle and, accordingly, that the drugs found following the stop had to be suppressed as fruit of the poisonous tree.

The Commonwealth now appeals, contending that: (a) KRS 189.380 requires a signal before making a lane change; and (b) even if we were to assume, for the sake of argument, that KRS 189.380 does not require a signal before changing lanes, the drug evidence at issue should not have been suppressed because the officer acted in good faith in stopping Fowler's vehicle.

## II. STANDARD OF REVIEW

■ The Kentucky Supreme Court has held that the test to use on appeal in reviewing a ruling concerning a warrantless search is: "First, review the factual findings of the circuit judge to see if they are supported by substantial evidence, RCr [2] 9.78, and then review the ruling on the motion to suppress *de novo* to see whether the decision was correct as a matter of law." *Commonwealth v. Pride,* 302 S.W.3d 43, 49 (Ky.2010). We review findings of fact for clear error, and we "give due weight to inferences drawn from those

2. Kentucky Rule of Criminal Procedure.

facts by resident judges and local law enforcement officers." *Stewart v. Commonwealth,* 44 S.W.3d 376, 380 (Ky.App.2000) (internal quotation marks and citations omitted). We also "give due weight ... to the circuit court's findings on the officers' credibility." *Baltimore v. Commonwealth,* 119 S.W.3d 532, 539 (Ky.App.2003).

The parties in the present case do not challenge the circuit court's factual findings and, upon review of the record, we find that the circuit court's factual findings are supported by substantial evidence. Thus, our focus in this appeal is on determining whether the circuit court's ruling was correct as a matter of law.

## III. ANALYSIS

### A. KRS 189.380

■ The Commonwealth first alleges that KRS 189.380 does require a driver to signal before making a lane change. That statute provides:

(1) A person shall not turn a vehicle or move right or left upon a roadway until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.

(2) A signal indicating the intention to turn right or left shall be given continuously for not less than the last one hundred (100) feet traveled by the motor vehicle before the turn.

(3) A bus driver shall not stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal to traffic following the bus.

(4) All signals required for a motor vehicle shall be given by signal lamps or mechanical signal devices.

(5) A signal required for a vehicle that is not a motor vehicle may be given by

either hand signals, signal lamps, or mechanical signal devices. The signal shall be given intermittently for the last fifty (50) feet traveled by the vehicle before the turn.

(6) Hand signals shall be executed in the following manner when operating a vehicle that is not a motor vehicle:

(a) The hand and arm shall be extended horizontally from the left side of the vehicle to indicate a left turn;

(b) The left arm shall be extended horizontally with the hand and arm extended upward from the elbow or the right arm and hand shall be extended horizontally to indicate a right turn;

(c) Either arm shall be extended horizontally with the hand and arm extended downward from the elbow to indicate a stop or decrease in speed.

In its analysis of this statute, the circuit court concluded that the statute did *not* require a signal prior to changing lanes. After reviewing a similar statute from Ohio that Fowler had cited, the circuit court reasoned as follows:

The Court agrees with the Defendant that the only prerequisite for a lawful lane change in Kentucky is that the vehicle's driver ensure that it can be done with reasonable safety. Initially, looking to the language of the statute, Section (1) describes two distinct actions, turns and movements to the right or left upon a roadway. It then requires that both be "made with reasonable safety" and mandates the use of "an appropriate signal" in a "manner" provided in later sections. However, those sections detail the manner a vehicle's driver must signal when turning, but are utterly silent as to lane changes. Conversely, Ohio's statute, which is substantially similar to Kentucky's in that [it] requires the use of a signal only in "the

manner hereinafter provided," expressly details the manner a person should signal when changing lanes.... The only conclusion to derive from Kentucky's scheme is that the Legislature did not intend to require signal use for lane changes, relying instead upon the instruction that roadway user ensure that the lane change is reasonably safe.

A survey of Kentucky case law bolsters this conclusion. The Court's research reveals that the legislature has amended KRS § 189.380 six times since its enactment in 1950. However, very few cases involving the law involve lane changes. By 1957, ... Section (1) read as follows:

No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety.... No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement.

*Smith v. Sizemore,* 300 S.W.2d 225, 228 (Ky.App.1957). At the time, "moving from a direct course included movement to the left or right. *McCoy v. Carter,* 323 S.W.2d 210, 217 (Ky.App.1959). According [to] *Ford v. Robinson,* 428 S.W.2d 772, 774 (Ky.App.1968), the 1960 amendment appears to have included a signal requirement before initiating a lane change because it expressly included a distance requirement. Removal of this language bolsters the Defendant's position because it demonstrates that the Legislature considered the issue and decided to remove the requirement that a signal be used during a lane change. This is consistent with the statute's object and policy, *viz.,* making Kentucky's roads safer by requiring notice of an impending turn to other roadway users. Lane changes arguably do not pose the

same risks to other roadway users as turning does.

(Footnote omitted). The circuit court also noted that

[o]nly one case, unpublished, concludes that signal usage is required under KRS § 189.380: *Ibarra Miranda v. [Com.]*, 2005 WL 791176 (Ky.App.). When making its conclusion the *Ibarra Miranda* court quotes only Section (1) without mentioning whether any of the Sections that follow pertain to lane changes. Apparently, the analysis herein was not presented to the court by that defendant.

▮ We disagree with the circuit court's holding and conclude that KRS 189.380 *does* require a signal prior to a lane change. We begin our analysis by restating the laws of statutory construction:

The interpretation of a statute is a matter of law. The primary purpose of judicial construction is to carry out the intent of the legislature. In construing a statute, the courts must consider the intended purpose of the statute—and the mischief intended to be remedied. A court may not interpret a statute at variance with its stated language. The first principle of statutory construction is to use the plain meaning of the words used in the statute. Statutes must be given a literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required. We lend words of a statute their normal, ordinary, everyday meaning. We are not at liberty to add or subtract from the legislative enactment or discover meanings not reasonably ascertainable from the language used. The courts should reject a construction that is unreasonable and absurd, in pref-

erence for one that is reasonable, rational, sensible and intelligent.

*Monumental Life Ins. Co. v. Department of Revenue*, 294 S.W.3d 10, 19 (Ky.App. 2008) (internal quotation marks, citations, and brackets omitted).

As set forth, *supra*, KRS 189.380(1) provides: "A person shall not turn a vehicle or move right or left upon a roadway until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided." The circuit court, in finding that the statute did not require a driver to signal prior to changing lanes, deleted language from the statute, which was improper. Specifically, the circuit court deleted the language "nor without giving an appropriate signal" when it interpreted the statute. This results in an absurd construction of the statute, as the statute clearly requires a driver to signal prior to changing lanes. Consequently, the circuit court's decision granting Fowler's motion to suppress is reversed, as Officer White had probable cause for the traffic stop based upon KRS 189.380 and Fowler's failure to signal a lane change. Consequently, the case is remanded for further proceedings.

▮ We further note that although the *Ibarra Miranda* case that the circuit court cited, but did not rely upon, was unpublished, it nonetheless qualifies as persuasive authority in this case. *See* CR[3] 76.28(4)(c). In *Ibarra Miranda*, this Court stated: "[P]ursuant to KRS 189.380, changing lanes without signaling is a traffic offense[.]" *Ibarra Miranda v. Commonwealth*, No. 2004–CA–000365–MR, 2005 WL 791176, *4 (Ky.App. Apr. 8, 2005) (unpublished) (footnote omitted). Therefore, *Ibarra Miranda* lends further support for our holding, *supra*, that KRS

---

**3.** Kentucky Rule of Civil Procedure.

189.380 requires a driver to signal prior to changing lanes.

## B. GOOD FAITH OF OFFICER

The Commonwealth next argues that even if we were to assume, for the sake of argument, that KRS 189.380 does not require a signal before changing lanes, the drug evidence at issue should not have been suppressed because the officer acted in good faith in stopping Fowler's vehicle. However, because we are reversing and remanding due to the circuit court's incorrect statutory construction, we decline to address this issue, as it is moot.

Accordingly, the order of the Jefferson Circuit Court is reversed and the case is remanded for further proceedings.

ALL CONCUR.