# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 15, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0231-MR

CORTES THORNTON                                       APPELLANT

V.

ON APPEAL FROM GRAVES CIRCUIT COURT
HONORABLE KEVIN D. BISHOP, JUDGE
NO. 22-CR-00051

COMMONWEALTH OF KENTUCKY                        APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Cortes Thornton entered a conditional *Alford*[1] plea to charges of criminal possession of a forged instrument; possession of a handgun by a convicted felon; receiving stolen property, firearm; tampering with physical evidence; and being a second-degree persistent felony offender (PFO).  He received a sentence of twenty years' imprisonment and appeals to this Court as a matter of right.[2] The sole issue presented in this appeal is whether the trial court erred by denying Thornton's motion to suppress evidence obtained following the

---

[1] A plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), allows a criminal defendant to maintain innocence while conceding that prosecutors have enough evidence to obtain a conviction.  *See also Pettiway v. Commonwealth,* 860 S.W.2d 766, 767 (Ky. 1993) ("An *Alford* plea is a 'plea of guilty,' regardless of any denial of underlying facts, and clearly constitutes a criminal conviction.").

[2] KY. CONST. § 110(2)(b).

execution of a search warrant.[3]  After careful review of the record, briefs, and the law, we affirm.

Mayfield Police Department Officer Cody Rogers received information that Thornton was selling crack cocaine out of his residence.  Officer Rogers discovered Thornton had an outstanding arrest warrant on charges of first-degree burglary and fourth-degree assault.[4]  Based upon this information, Officer Rogers consulted with other officers, the Graves County Sheriff's Department, and the Graves County Jail's canine unit.  A plan was established to serve the arrest warrant.

The officers arrived at Thornton's residence shortly before midnight on December 2, 2021.  They quietly set up positions at the front and rear of the residence.  Officer Rogers approached the left side of the front door and knocked while another officer remained on the front porch.  From behind the closed door, Thornton asked who was there.  Officer Rogers replied, "me." Thornton again asked who it was, and Officer Rogers repeated, "me."  Thornton then stated, "Hang on, I've got something for you."  Thornton unlocked and slightly opened the door.  Hearing some noise inside the residence, Officer Rogers raised his firearm, activated his weapon-mounted flashlight, and stated, "Police."  Almost simultaneously a shot was fired from within the residence

---

[3] The trial court's judgment and sentence on Thornton's *Alford* plea specifically preserved Thornton's right to "appeal the denial of his motion to suppress, his motion to reconsider the denial of his motion to suppress, and any other rulings related to Counts 1 & 2 (the charges of attempted murder of a police officer) and the suppression issue.

[4] It does not appear that this arrest warrant is included in the present record.

through the door opening.[5] Officer Rogers and the other officer took cover and were not hit by the gunfire. Shortly thereafter, the back door opened, and a person fled from the residence. This person was apprehended and identified as Tario Curtis. Curtis was unarmed but had drugs on his person. After being informed of his *Miranda*[6] rights, Curtis informed the officers that Thornton was inside the residence.

Officer Rogers and the other officers secured the perimeter of the residence and asked Thornton to come outside unarmed. Approximately 28 minutes elapsed. Thornton called the Kentucky State Police (KSP) dispatch and stated that he wished to come out of the residence. The KSP relayed this information to Officer Rogers at the scene. Thornton then came out of the residence waving a white t-shirt before being arrested. Various officers, not including Officer Rogers, entered the residence to conduct a protective sweep for their safety to ensure no other persons were present. A search warrant was later obtained for the residence. The search revealed a quantity of marijuana, a small quantity of crack cocaine, scales, a loaded handgun, and two counterfeit $20 bills.

Thornton was indicted on charges of attempted murder of a police officer; first-degree trafficking in cocaine, second offense; criminal possession of a forged instrument; possession of a handgun by a convicted felon; receiving

---

[5] Officer Rogers admitted at the suppression hearing that he did not believe Thornton would have heard him say "police" before the shot was fired.

[6] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

3

stolen property, firearm; tampering with physical evidence; possession of marijuana; possession of drug paraphernalia; and being a second-degree PFO. He filed a motion to suppress the evidence obtained from the search arguing that Officer Rogers failed to comply with the Mayfield Police Department's knock-and-announce policy and further failed to properly identify himself as a police officer.

The trial court denied the motion to suppress, concluding that Officer Rogers's alleged failure to properly announce his presence did not negate the probable cause for the issuance of the search warrant. The trial court further concluded that Officer Rogers had a duly issued arrest warrant and was shot at by Thornton before any entry was made into the residence. Additionally, the trial court determined that probable cause for a search existed at the time Thornton shot at Officer Rogers and exigent circumstances conceivably existed at that point to justify the seizure of Thornton's person. The trial court also determined any failure to comply with internal knock-and-announce policies did not taint the probable cause justifying the issuance of the search warrant.

Thornton subsequently entered a conditional *Alford* plea to charges of criminal possession of a forged instrument; possession of a handgun by a convicted felon; receiving stolen property, firearm; tampering with physical evidence; and being a second-degree persistent felony offender. The attempted murder of a police officer and drug charges were dismissed. This appeal followed.

4

Thornton argues the trial court erred by denying his suppression motion because Officer Rogers created the exigency by violating the knock-and-announce rule to manufacture probable cause to search the residence. We disagree.

At the outset, we note Thornton's argument regarding the police-created exigency doctrine is misplaced. In *Kentucky v. King,* 563 U.S. 452, 461 (2011), the United States Supreme Court examined the police-created exigency doctrine and held "the exigent circumstances rule justifies *a warrantless search* when the conduct of the police preceding the exigency is reasonable in the same sense." *Id.* at 462 (emphasis added). In other words, "[w]here . . . the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed." *Id.* While the initial interaction between Officer Rogers and Thornton gave rise to the circumstances that formed the basis of the search warrant, the subsequent search was, in fact, conducted pursuant to a warrant. Therefore, the *King* decision is inapplicable, and we decline to extend its reasoning to the present appeal.

Additionally, any alleged knock-and-announce violation committed during the service of the arrest warrant does not justify the exclusion of evidence obtained after the execution of a subsequent search warrant. Even assuming for argument that Officer Rogers violated the knock-and-announce rule as embodied in Fourth Amendment jurisprudence and the Mayfield Police Department's internal policies, the Supreme Court has directly held the

5

exclusionary rule does not apply to knock-and-announce violations. *Hudson v. Michigan*, 547 U.S. 586, 599 (2006). The Supreme Court explained:

> Until a valid warrant has issued, citizens are entitled to shield "their persons, houses, papers, and effects," U.S. Const., Amdt. 4, from the government's scrutiny. Exclusion of the evidence obtained by a warrantless search vindicates that entitlement. The interests protected by the knock-and-announce requirement are quite different—and do not include the shielding of potential evidence from the government's eyes.

*Id.* at 593. The knock-and-announce rule serves to protect three interests: (1) the protection of human life and limb; (2) the protection of property; and (3) the protection of privacy and dignity. *Id.* at 594.

The knock-and-announce rule protects life and limb "because an unannounced entry may provoke violence in supposed self-defense by the surprised resident." *Id.* It protects property by providing individuals "the opportunity to comply with the law and to avoid the destruction of property occasioned by a forcible entry." *Id.* (quoting *Richards v. Wisconsin*, 520 U.S. 385, 393 n.5 (1997). Finally, the knock-and-announce rule protects "those elements of privacy and dignity that can be destroyed by a sudden entrance" by giving "residents the 'opportunity to prepare themselves for' the entry of the police." *Id.* (quoting *Richards*, 520 U.S. at 393 n.5). "What the knock-and-announce rule has never protected, however, is one's interest in preventing the government from seeing or taking evidence described in a warrant." *Id.* In other words, "the causal link between a violation of the knock-and-announce requirement and a later search is too attenuated to allow suppression." *Id.* at 603 (Kennedy, J., concurring in part and concurring in the judgment).

6

Under the reasoning of *Hudson*, we cannot conclude the trial court erred by denying the motion to suppress even assuming a knock-and-announce violation occurred. In the present appeal, the incriminating evidence was not discovered as a result of the alleged knock-and-announce violation but was discovered through the execution of a search warrant. Thus, Thornton's arguments that the trial court failed to properly construe the knock-and-announce requirement and that he was deprived of the opportunity to cross-examine Officer Rogers on the Mayfield Police Department's knock-and-announce policies are of no moment.

The fundamental question before this Court is whether the search warrant was supported by probable cause. When a defendant moves to suppress evidence obtained pursuant to a search warrant, the trial court must determine whether probable cause existed to support the issuance of the warrant, taking into account "the 'totality of the circumstances' presented within the four corners of the affidavit[.]" *Commonwealth v. Pride*, 302 S.W.3d 43, 49 (Ky. 2010). In *Gasaway v. Commonwealth*, 671 S.W.3d 298, 317 (Ky. 2023), this Court set forth the standard for probable cause as a

> "commonsense, nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." The Supreme Court described "probable cause to search as existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in a particular place. In other words, "[t]here must be a fair probability that the specific place that officers want to search will contain the specific things that they are looking for." Probable cause is a "fluid concept," rather than "a finely-tuned standard comparable to the standards of proof beyond a reasonable doubt or of proof by a preponderance of the

7

> evidence." Direct evidence of probable cause is not strictly required and reviewing courts afford "due weight to inferences drawn from those facts by resident judges and local law enforcement officers."

(Citations omitted).

On appellate review, our task is to "determine first if the facts found by the trial judge are supported by substantial evidence . . . and then to determine whether the trial judge correctly determined that the issuing judge did or did not have a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Pride*, 302 S.W.3d at 49 (citation omitted).

Thornton contends the trial court's finding that Thornton said, "Hang on, I've got something for you" was not supported by substantial evidence because it was based solely on Officer Rogers's testimony at the suppression hearing. Our review of the bodycam footage played at the suppression demonstrates that Thornton did say "hold on," while the remainder appeared to be cut off by defense counsel pausing the footage. Thornton nevertheless points out that the statement as recounted by Officer Rogers did not appear in his citation, search warrant affidavit, or prior testimony at the preliminary hearing. Despite these purported inconsistencies, we cannot conclude the trial court's finding was clearly erroneous. A trial court's decision on a suppression motion is "based squarely [on] the evidence presented at the suppression hearing." *Hampton v. Commonwealth*, 231 S.W.3d 740, 749 (Ky. 2007). Testimony at a suppression hearing does not require corroboration. When confronted with conflicting testimony or inconsistent evidence, the trial court, as factfinder, is entitled to weigh the evidence and judge the credibility of the witnesses. *Id.* As

8

a reviewing court, we cannot simply substitute our view of the evidence for that of the trial court. *Payne v. Commonwealth*, 681 S.W.3d 1, 4 (Ky. 2023).

Thornton further disputes the trial court's finding that Officer Rogers heard knocking at the back door before he knocked on the front door. However, a knocking sound is clearly audible on Officer Rogers's bodycam footage which was played at the suppression hearing. Based on our review of the record, we conclude the trial court's findings were supported by substantial evidence and turn to whether probable cause supported the issuance of the search warrant.

As stated above, the determination of probable cause is limited to the affidavit supporting the search warrant. *Robinson v. Commonwealth*, 550 S.W.2d 496, 497 (Ky. 1977). In his affidavit for the search warrant, Officer Rogers stated:

> On 12/02/2021, I received information that Cortes Thornton . . . was selling illegal substances, specifically crack cocaine, from 702 East South Street, Mayfield, KY 42066. A computer search of Cortes Thornton's identification card revealed he had an active warrant for Burglary 2nd degree and Assault 4th degree. The address listed on his identification card is 702 East South Street, Mayfield, KY 42066.
>
> . . .
>
> Mayfield Police Officers, Graves County Sheriff's Office Deputies and a Graves County Jail Deputy K9 arrived at 702 East South Street at approximately 23:58 hours. As I stood on the front porch I could hear a male inside the residence talking. A Sheriff's Deputy knocked on the rear door multiple times but no one answered. After a few minutes, I knocked on the front door and a male asked who it was. I responded with "me." After a few seconds, a male unlocked the door and cracked the door opened. I simultaneously raised my firearm, activated the weapon mounted flashlight and announced myself as Police. At that time, I saw a muzzle flash and

9

heard the sound of a gunshot. The door closed and Officer[s] took cover.

Officer[s] called Thornton out of the residence and Thornton was taken into custody. Thornton was not in possession of a firearm at the time he was taken into custody. The residence was cleared for any other occupants and was secured on the perimeter of the property after no other occupants were located.

Upon these facts as stated in the affidavit, we conclude the search warrant was supported by probable cause. Officer Rogers had a valid felony warrant for Thornton's arrest. Certainly, an arrest warrant, taken alone, does not justify the wholesale search of a residence beyond that necessary to locate the suspect. *See Barrett v. Commonwealth*, 470 S.W.3d 337, 344 (Ky. 2015). But again, the search of the residence was not conducted pursuant to the arrest warrant. Moreover, without evidence of the arrest warrant and the circumstances surroundings its issuance in the present record, we cannot indulge Thornton's presumption that the execution of the warrant violated KRS[7] 455.180, which only authorizes entry without notice pursuant to a warrant in various listed conditions. Neither can we accept Thornton's claim that he was privileged to fire in self-defense pursuant to KRS 503.085 when the self-defense issue was not presented in his motion to suppress and he has otherwise failed to indicate whether the issue was properly preserved for review. *See Gasaway*, 671 S.W.3d at 314.

Further, Thornton's contention that the service of the arrest warrant was merely a pretext for the subsequent search is without merit because the

---

[7] Kentucky Revised Statutes.

10

Supreme Court has held that the reasonableness of a search does not depend "on the actual motivations of the individual officers involved." *Whren v. United States*, 517 U.S. 806, 813 (1996). In other words, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* Indeed,

> Police do not violate the Fourth Amendment's prohibition of unreasonable searches and seizures by using probable cause derived from evidence related to one crime as a pretext for investigating another crime for which probable cause to search or arrest does not exist. Though the scope of the actual investigation must be limited to investigatory activity that is justified by the probable cause that has been established, the police need not limit their investigation to any particular crime.

William E. Ringel, *Searches & Seizures, Arrests & Confessions* § 4:6 (2d ed. 2023).

Here, Officer Rogers received an anonymous tip that Thornton was selling crack cocaine from his residence. While this anonymous tip alone would not have provided probable cause for a search, it led Officer Rogers to discover Thornton had an outstanding felony arrest warrant. Thereafter, Thornton discharged a firearm during the attempted execution of the arrest warrant, though he was later arrested without the weapon. We need not speculate on what may have transpired had Thornton simply not answered the door instead of firing at Officer Rogers.

Under these circumstances, we conclude probable cause existed to search the residence for the discharged firearm without the need to pass upon the wisdom or efficacy of Officer Rogers's tactical decision-making. Once probable cause was established to search for the firearm, it is immaterial that Officer Rogers subjectively expected that illegal drugs and other contraband

11

would also be present because the nexus "between the item to be seized and criminal behavior" is "automatically provided in the case of fruits, instrumentalities or contraband[.]" *Warden v. Hayden*, 387 U.S. 294, 307 (1967).

We continue to adhere to the principle that "reasonableness is the touchstone of any Fourth Amendment analysis[.]" *Commonwealth v. Bembury*, 677 S.W.3d 385, 408 (Ky. 2023) (Nickell, J., concurring). While the manner in which the arrest warrant was served is certainly open to question, we cannot conclude Thornton's Fourth Amendment rights were violated or the trial court otherwise erred by denying the motion to suppress.

Accordingly, the judgment of the Graves Circuit Court is affirmed.

All sitting. VanMeter, C.J.; Bisig, Conley, Keller, Lambert and Nickell, JJ., concur. Thompson, J., concurs in result only.

COUNSEL FOR APPELLANT:

Russell M. Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General


COUNSEL FOR APPELLEE:

Kathleen K. Schmidt
Assistant Public Advocate