David Dodge of Winchester Kentucky, drew two bills of exchange, one bearing date the first of April, 1817, and the other bearing date the 24tb of March in the same year, and in each, requesting Richard Bowen & Cq. merchants at Pittsburg, Pennsylvania, to pay Joseph Mills one thousand dollars, at the Penis, sylvania Bank in Philadelphia, &c.
Each of these bills was endorsed by Mills, to Wm. Rouse, & Co. and by Wm. Rouse, & Co. endorsed to Simon Giratz and brothers.- One of the bills was accepted by the drawees forpayment, on the 8th of April 1817, and the other was accepted on the 10th ol the same month and year. The bill which was accepted on the 8th of April, was presented at the Bank in Philadelphia on the 10th of June following, for payment, and payment not being made, was, on the same day, protested by a notary public, for non payment; and the bill which was accepted on the lOth of April, was. on the 12th of June following, presented at the bank in Philadelphia, forpayment, and payment not being made, was likewise protested for non payment, by the notary,
Subsequent to this, these bills were taken up by Rouse, & Co. and application being made by one of the firm, to Mills, forpayment, he, on the 28th day of July, 1817, exeputed to them his obligation, with security. for two thousand, two hundred and thirty four dollars and fifty cents, including principal, interest and damages, and took up the hills. The obligation which was thus-given by Mills, not being paid, Rouse & Co. brought suit thereon, and recovered judgment at law.
Mills then exhibited bis bill in equity, alleging that be had never received notice in writing of the non pay. meat of the bills, but being induced from the represen, tations of'Rouse, to believe that, he, was liable for the amount of the bills, together with interest and dama, ges, and that belief being strengthend by an erroneous opinion given him by an attorney in whom lie confided, and to whom he applied for information, lie exocuted the obligation upon which the judgment at law has been obtained. He charges,-that the obliga *205 ftion was given by him under a mistaken appreben. sion of his liability, and insists that he ought to he re. lieyed therefrom. He moreover alleges, that even upon the supposition of his liability, the obligation ksfoi* more than should have been calculated against him; that $' 859 67 cents has since, been paid 136.8 therof by Dodge, the drawer of the bill, and the balance by him. He also alleges by an amendment to his bill, that Rouse & Co. had funds of Dodge in their hands to pay the bills, and that the bills were not protested on the day of payment He charges, that Dodge is insolvent, and exhibits the bills of exchange to be. returned to Rouse & Co. He admits thar the name of Dodge has been erased from the bilis, but alleges that was done by Dodge upon an interview with him on the subject of payment, and insists that he ought not to be prejudiced thereby. The bill asked and obtained an injunction against the judgment at law, and prays for the appropriate relief.
Where the endorser of a biI1 of exchange takes up the bills after they are protested for bond for the amount, and impeaches the consideration ofthe bond, on the ground, that he had not legal notice of the dis honor of the bill he takes the onus probandi on himself
*205 The answer of Rouse & Co. admits nothing favorable to the relief sought. They allege that Mills had due notice of the non-payment of t]ie bills, and insist upon his liability for the amount of the obligation and judgment at law--.
The court below was of opinion, that the obligation ot Mills includes $28 08 cents more than ought to have been included, and for that amount perpetuated the injunction which had been awarded against the judgment at law | but as to the residue of the judgment, dissolved the injunction, with damages, and decreed Rouse & Co. to pay costs.
from that decree. Mills lias appealed to this court,
2. The principle is not perceived by this court, up on which Mills can have any just cause to complain of the decree of the court below. If, in point of fact. regular notice in due time was not given to him of the non payment of the bills, Rouse & Co. in an action on the bills, could not have succeeded in subjecting him to the payment of either the principal, interest or damages ; and not being liable on the bills, if the oh ligation was given under a mistaken impression of be. ing liable, Mills might be entitled to the relief sought In his bill. But, to authorise the court to grant that relief, it should not only appear that the obligation was given to secure the payment of the amount of the bills *206 tion of such evidence, &c. but it should also have been proven, that in consequence of not having received notice, Mills was under no liability for the. payment of the bills. We have, however, been unable to discover in the record :tny such evidence. To require of Mills the produc. it is true, as was contended in argument, is imposing on him the necessity of proving a negative, which in the general, should not be done. But it ought not to he forgotten, that Mills has brought upon himself that necessity, by his own voluntary act. If, instead of giving his obligation to Rouse & Co. he had compelled them to assert their demand against him in an action at law, on the bills, they would have been put upon the indispensible necessity of proving that due and regular nolice of the non payment of the hills, was given him. But by giving that obligation, Mills must he understood to have impliedly admitted, either that due and regular notice was given, or that it might thereafter be so given, as to subject him to the payment of the bills. The only circumstance relied on in argument as tending to prove that due notice was not given to Mills, was attempted to be drawn from the opinion given by the attorney who was consulted by Mills when the obligation was given. It was urged, that Mills was informed by that opinion, that upoif^hereafter receiving regular notice in writing from Rouse & Co. he would be liable to them for the amount of the. bills, damages, &c. and as Rouse and Mills were at that time both present, it was thence inferred, that, regular notice had not been previously given to Mills. We do not. however, admit the construction put upon that opinion of the attorney, in argument. It is more probable, the attorney intended to express the opinion, that Mills could not be chargable on the bill, unless due notice of the non-payment had or should be given to him. But admitting the construct ion contended for in argument to he correct, and admitting the inference t,hence deduced, still it would not follow, that Mills might not iiave been made liable on tho'bills. Mills may not, at the time that opinion was given, have received such notice as would subject him to the. payment of damages, as well as the amount of the hills and interest, but from any thing apparent in this record, circumstances may have existed which would have authorised sufficient notice thereafter to be *207 given by Rouse & Co. The bills appear to have been assigned by Rouse & Co. to Simon Gratz and brothers, and by Gratz, returned to Rouse & Co. before the attorney was consulted. Regular notice may have been transmitted by the Gratzes from Philadelphia in due time, and that notice may not have been received by Rouse & Co. until the day on which the attorney gave his opinion. If, therefore, such were the state of facts, (and whether or not, the record is altogether silent,) Mills might have been subjected to the payment of the bills, &c. by thereafter receiving due and regular notice from Rouse & Co. for it is au established principle, that after receiving due and regular notice from the holder of a bill of its dishonor, an endorser, upon giving due notice to those whose names stand previously on the bill, will have recourse to them on the bill. Whatever, therefore, may be the correct import of the opinion given by the attorney to Mills* the result is equally unfavorable .to Mills* haying been discharged from liability on the bills, at the time of giving his obligation to Rouse & Co.
Bills of exchange drawn in Kentucky oa any person in another state of tile Union, and payable in that state, maybe legally protested on the last day of grace.
The provis. ions of ou.r act of assembly on this subjeat, are materially different from those of the act of parliament, respecting inland bills of exchange.
3. With respéct to the objection taken to the time of protesting the bills, it may be remarked, that we apt prebend bills of their description may be regularly protested, as they were, on the last day of grace. If the provisions of the statute of this country,* in reía, lion to protesting bills drawn on persons in any of the sister states, were similar to the provisions of the statute of England in relation to inland bills, there might, according to the adjudications of the courts of that country, be reason to doubt the sufficiency of the pro. tests of the bills in question. But there is a material difference in the provisions of the two statutes, and after the most critical examination of the statute of this country, no expression is perceived calculated to raise even a doubt, as to the propriety of protesting such bills as those endorsed by Mills on the last day of grace; and there is clearly nothing in the general principles of the law merchant, which forbids such a protest.
It results, therefore, that Mills cannot be relieved from his obligation, and as the court below in its decree has made his injunction perpetual, for a sum equal to that which was improperly included in the obligation^ thedecree must,be affirmed with costs, and damages on the damages given by that court.

 Dig. 194.