RENDERED: MARCH 17, 2016
TO BE PUBLISHED

$\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Kentucky}$ FINAL

2014-SC-000445-DG DATE 4-7-16 EnA Grouin P.C.

DALLIS ABNEY                                                          APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.               CASE NO. 2013-CA-000026-MR
ESTILL CIRCUIT COURT NO. 11-CR-00074


COMMONWEALTH OF KENTUCKY                                              APPELLEE


**OPINION OF THE COURT BY JUSTICE NOBLE**

**AFFIRMING**

This case involves the validity of a search warrant that was issued based on an affidavit recounting observations made by Cody Abney, Appellant Dallis Abney's son, of drug-trafficking activity by Appellant. The affidavit did not state the time and date when the drug-trafficking activity was observed. In a 1961 opinion, this Court's predecessor held that a search-warrant "affidavit is defective unless it discloses the time at which the observation was made ... if the affidavit shows on its face that it is based on information or belief." *Henson v. Commonwealth,* 347 S.W.2d 546, 546 (Ky. 1961). Appellant claims this rule applies and requires suppression of the evidence obtained pursuant to the search warrant.

The issue before this Court is whether *Henson* still presents a viable rule, or whether it has been replaced by the totality-of-the-circumstances test of *Illinois v. Gates*, 462 U.S. 213 (1983), and *Beemer v. Commonwealth*, 665 S.W.2d 912 (Ky. 1984). Both the trial court and Court of Appeals found that the affidavit was sufficient to support issuance of a warrant under the totality of the circumstances test. This Court agrees that the validity of a search-warrant affidavit and resulting warrant is determined under the totality of the circumstances, and is not controlled by *Henson's* bright-line rule.

## I. Background

On August 29, 2011, Powell County Deputy Sheriff Matt Reed was notified by the Powell County Sheriff that he was following a vehicle that appeared to be driven by someone under the influence. Deputy Reed caught up to the sheriff and took up following the vehicle. After seeing the vehicle cross the center line several times, he initiated a traffic stop. The driver of the vehicle was Cody Abney, who did not have a driver's license. Also in the vehicle were the Appellant and a female, Kim Gould. Cody is the Appellant's son.

Deputy Reed had the parties exit the vehicle, and asked for permission to search the car, which was given. The deputy claimed that the car smelled of marijuana, and he found narcotics not in their original container in Ms. Gould's purse. When Appellant was asked to produce his driver's license, he pulled the driver's license, approximately $6,000 in cash, and some other cards out of his pocket. He also pulled out several small, crushed green leaves that the deputy believed to be marijuana. Although this substance was collected as evidence, it was never analyzed.

2

Appellant was arrested and charged with trafficking in marijuana. Gould was arrested on the narcotics charge. Cody, however was not arrested, although he agreed to go to the police station to talk to officers. At the police station, father and son were separated, and Cody was kept at the station for several hours.

Because he had previous reports that Appellant was trafficking in drugs from his home, Deputy Reed asked Cody if there was drug trafficking or other illegal activity going on at Appellant's residence. Deputy Reed testified at the suppression hearing that Cody admitted seeing the Appellant weighing marijuana on scales, and seeing money and marijuana in a safe. He also testified that Cody gave a detailed description about how to find approximately 20 pounds of marijuana in the Appellant's garage. Cody denied making most of this statement when he testified at the suppression hearing.

Although he had been arrested in Powell County, the Appellant's residence was in Estill County. Consequently, the Kentucky State Police were asked to obtain a warrant and search the residence. After hearing Deputy Reed's version of what Cody had said, Trooper Joshua Brewer asked Deputy Reed to get Cody on the phone to verify the information. At the suppression hearing, the trooper testified that the person answering the phone identified himself as Cody Abney, and gave the Appellant's address as his residence. This person told the trooper that there were approximately 15 pounds of marijuana in his house and garage *at the time,* and that his father hid marijuana all over the house. Trooper Brewer then completed the Affidavit for Search Warrant

3

form AOC-336 based on this information and presented it to an Estill County district judge who issued the search warrant.

In the search of the Appellant's home, a large quantity of marijuana and prescription pills was found, leading to the Appellant being charged with trafficking in marijuana in an amount greater than five pounds; trafficking in a controlled substance, second degree, first offense; possession of a controlled substance, first degree, first offense; possession of drug paraphernalia; prescription controlled substance not in proper container, first offense; and two counts of possession of a controlled substance, third degree.

Appellant moved to suppress this evidence, claiming that the search warrant was invalid because the affidavit on which it was based was fatally flawed. As noted above, Appellant claimed that the affidavit violated *Henson v. Commonwealth* because it did not state when Cody had observed his father's illegal activity. The trial court declined to apply *Henson's* seemingly bright-line rule and instead evaluated the affidavit and warrant under the totality of the circumstances. The court concluded that the affidavit showed sufficient probable cause to support issuance of the warrant and, as a result, denied the motion to suppress.

Appellant entered a conditional guilty plea to trafficking in marijuana greater than five pounds, possession of a controlled substance, second degree; and possession of a controlled substance, first degree. The other counts were dismissed. The court sentenced Appellant to concurrent sentences totaling five years in prison and a $1,000 fine, but allowed him to remain free on bond pending appeal.

4

Appellant appealed, and the lower court was affirmed by the Court of Appeals. This Court took discretionary review to address the viability of *Henson* and to clearly state the appropriate standard of review as to the sufficiency of affidavits presented in support of warrant requests.

## II. Analysis

*Henson v. Commonwealth* has never been expressly overruled by this Court, and it is consequently the basis of Appellant's argument today. In that case, written in 1961, the Court of Appeals, then the highest appellate court, held in an opinion by Judge John Palmore that the rule that a search-warrant "affidavit is defective unless it discloses the time at which the observation was made definitely applies in Kentucky if the affidavit shows on its face that it is based on information and belief." *Henson*, 347 S.W.2d at 546. The affidavit in that case had stated that the defendant "now has in possession" the contraband (liquor) and that the knowledge of the possession was gained by "[o]bservation, in person." *Id.* Despite the strength of that statement, the Court found that *when* the possession occurred had to be specifically stated in order for probable cause to issue a warrant to exist. The Court stated:

> The necessity for a simple statement of how and when an allegedly existing fact was observed could be unreasonable or burdensome only to one who actually does not have enough reliable information to justify the warrant. The onus of being specific is little enough price for the suspension of so valuable a right.

*Id.* at 548.

This extremely strong statement of what is necessary for probable cause to issue a search warrant remained the law of the Commonwealth for many

5

years. It expresses a concern over the staleness of the information used to obtain the warrant, which is, no doubt, a valid consideration.

But technical requirements for warrants and their supporting affidavits have largely been done away with. Indeed, the U.S. Supreme Court has noted that the "[t]echnical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). In their place, the Court has evaluated search-warrant affidavits (and whether they establish probable cause) under a totality-of-the-circumstances analysis. *Id.* at 238. As stated in *Gates*:

> The task of the [warrant] issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Id.* at 238–39 (second alteration in original). This Court adopted *Gates'* totality-of-the-circumstances approach in *Beemer v. Commonwealth*, 665 S.W.2d 912, 915 (Ky. 1984).

*Gates* was specifically about information from anonymous informants. Prior to *Gates,* the United States Supreme Court analyzed the sufficiency of search-warrant affidavits based on such information under a stringent two-prong test requiring that the basis of the informant's knowledge be known and, when the informant was anonymous, that his reliability must be established, as set out in *Aguilar v. Texas,* 378 U.S. 108 (1964) and *Spinelli v. United States,*

6

393 U.S. 410 (1969). But as the Court expressed in *Gates,* there are sound reasons why such strict specificity is not practical.

Affidavits are frequently drafted by non-lawyers, who cannot be expected to keep abreast of "each judicial refinement" relating to probable cause. *Gates,* 462 U.S. at 235. Affidavits are often done in haste. *Id.* And most warrants are issued "on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings." *Id.* at 235–36. And, at any rate, how do the technical refinements actually assist a judge in determining probable cause?

According to the Court in *Gates,* such hypertechnical requirements disincentivize police officers from obtaining warrants, even though the Constitution states a clear preference for searches conducted under a warrant. Instead, the Court speculated, officers "might well resort to warrantless searches, with the hope of relying on consent or some other exception to the warrant clause that might develop at the time of the search." *Id.* at 236. Also, allowing warrants on a reasonable rather than a hypertechnical basis, thus resulting in more warrants, "reduces the perception of unlawful or intrusive police conduct," *id.,* because the warrant gives the assurance that there is a need to search, that the search is limited, and that it is being done under lawful authority.

The *Gates* Court recalled that the traditional standard for review of an issuing magistrate's probable-cause determination was whether there was a substantial basis to believe that evidence of wrongdoing would be uncovered by the search, and that this had previously satisfied Fourth Amendment

7

requirements. *Id.* (citing *Jones v. United States,* 362 U.S. 257 (1960)). The Court thus concluded: "We think reaffirmation of this standard better serves the purpose of encouraging recourse to the warrant procedure and is more consistent with our traditional deference to the probable cause determinations of magistrates than is the 'two-pronged test.'" *Id.* at 237.

Although *Gates* was specifically about the two-pronged *Aguilar-Spinelli* test, its totality-of-the-circumstances approach has been applied more broadly. *See, e.g., Florida v. Harris,* 133 S. Ct. 1050, 1055 (2013) (applying *Gates* to dog-sniff cases). Now, all determinations of probable cause, which is necessary for issuance of a search warrant, "depend[] on the totality of the circumstances," *Maryland v. Pringle,* 540 U.S. 366, 371 (2003), rather than narrower, specific rules. And thus, since this Court adopted the *Gates* standard, this Court has applied it repeatedly to all manner of probable-cause determinations. *See, e.g. Commonwealth v. Eckerle,* 470 S.W.3d 712, 723 (Ky. 2015) (self-defense claims) *Rawls v. Commonwealth,* 434 S.W.3d 48, 58 (Ky. 2014) (warrant based on confidential informant's tip); *Commonwealth v. Walker,* 729 S.W.2d 440, 441 (Ky. 1987) (warrant based on officer's observations and controlled buy).

The law is clear: "the Fourth Amendment's requirement of probable cause for the issuance of a search warrant is to be applied, not according to a fixed and rigid formula, but rather in light of the 'totality of the circumstances' made known to the magistrate." *Massachusetts v. Upton,* 466 U.S. 727, 728 (1984). That is the only standard for reviewing the issuance of a search warrant. *See Commonwealth v. Pride,* 302 S.W.3d 43, 47 (Ky. 2010) (stating

8

that "the standard for reviewing the issuance of a search warrant is provided by *Illinois v. Gates*").

Thus, to the extent that *Henson* applies more specific requirements to a search-warrant affidavit and, in effect, requires a more rigorous review, it is overruled. A search-warrant affidavit is not rendered invalid simply because it does not include the time and date of any observations on which it relies, provided the totality of the circumstances indicates with reasonable reliability that the evidence sought is located in the place to be searched. That said, it is always the better practice to include such information, as it forecloses any complaint about the staleness of the information.

As to this case, we must hold that the trial court applied the correct standard. We further hold that the trial court did not err in overruling Appellant's motion to suppress because the search warrant was adequately supported by probable cause.

The pertinent part of the affidavit supporting the warrant request states:

> The affiant was contacted by Deputy Matt Reed of the Powell County Sheriff's Department. Deputy Reed indicated that during a traffic stop in Powell County he observed a strong smell of marijuana in a vehicle owned by Dallis Abney. He observed marijuana mixed in with money that Dallis Abney had pulled from his pant's [sic] pocket. Upon interviewing Cody Abney Deputy Reed learned that there was a significant amount of marijuana stored at the above residence.
>
> ....
>
> The Affiant conducted an interview with Cody Abney. Based on the interview the Affiant learned that Cody Abney lived at the above described residence with his father, Dall's [sic] Abney. Cody Abney indicated that Dallis Abney keeps approximately 10 to 20 pounds of marijuana in the safe at the home along with proceeds from the sale of marijuana. He indicates Dallis Abney sells the marijuana out of the house and that he keeps the marijuana in a safe that is weighed out on scales as he sells it.

9

Although Cody later disputed the affidavit's claims, it nonetheless clearly contains sufficient facts to support a finding of probable cause. At the suppression hearing, both Deputy Reed and Trooper Brewer testified that Cody gave his address as Appellant's residence. Both testified that Cody had not only said that his father had a large quantity of marijuana in the home, but that he also told them where it could be found. Trooper Brewer further testified that Cody told him there was probably 15 pounds of marijuana in his house and garage *at the time*. The warrant was obtained and executed immediately thereafter. And although Cody disputed this at the suppression hearing, the trial court gave a logical rationale—Cody's fear for the depth of trouble his father was in—as to why he believed the officers instead of Cody. Given the close relationship between the informant and Appellant, the opportunity the informant had to see the contraband in the home, and the immediacy of proceeding to obtain the warrant, there is an evident "substantial basis" under the totality of the circumstances to believe that the search would produce "evidence of wrongdoing."

### III. Conclusion

For the foregoing reasons, the Court of Appeals is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Tucker Richardson III
Baldani, Rowland & Richardson
300 West Short Street
Lexington, Kentucky 40507


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General

James Hays Lawson
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601