# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 19, 2026
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0031-MR

CHRISTOPHER T. THRASHER        APPELLANT


V.        ON APPEAL FROM CLINTON CIRCUIT COURT
HONORABLE DAVID WILLIAMS, JUDGE
NO. 21-CR-00114


COMMONWEALTH OF KENTUCKY        APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING IN PART, REVERSING IN PART, AND REMANDING</u>**

This case is before the Court as a matter of right following the conviction of the Appellant, Christopher Thrasher, for twenty-two counts of possession of a matter portraying a minor in a sexual performance. He was sentenced to twenty years in prison. His first claim of error is the underlying search warrant contained a statement made with a reckless disregard for its truth and omitted a material fact and, thus, lacked probable cause when these alleged errors are remedied. Second, he argues the trial court committed palpable error in admitting an email conversation into evidence. Third, the trial court palpably erred when it informed the jury the maximum possible sentence was seventy years in prison and failed to inform the jury Thrasher would be parole eligible upon completion of the Sex Offender Treatment Program. Finally, Thrasher argues his convictions currently constitute Class C felonies but should properly

be considered Class D felonies pre-dating recent legislative amendments. For the following reasons, we affirm Thrasher's convictions but conclude palpable error occurred during the penalty phase necessitating resentencing.

## I.     Facts

Thrasher and his ex-wife, Stephanie, separated in the summer of 2020. While moving out, Stephanie found a printout of a snippet of an email conversation regarding obtaining images of an underage girl. This conversation took place in 2007 and was supposedly observed by Stephanie at that time, who then printed the conversation unbeknownst to Thrasher. She retained the printout but did nothing with it until November 2020 when she turned it over to the Kentucky State Police. Trooper Warinner was at that time investigating Thrasher regarding an accusation that he had sexually abused his eleven-year-old niece. Based on this allegation and the email conversation, Trooper Warinner sought and obtained a warrant to seize electronic devices in Thrasher's home. A second warrant was obtained to search the contents of four computers. Three of these computers were found to contain images portraying minors in a sexual performance and formed the basis for the underlying convictions.

The warrant affidavit for the second search warrant stated, in relevant part:

> On June 15, 2020, at approximately 8:00 am Trooper Jordan Carter received information that [J.S.][1] had concerns about her

---

[1] Out of concern for identifying a potential victim, we use initials for the victim and victim's mother. They share the same initials, but this will not be a cause for confusion.

daughter being sexually abused by Chris Thrasher, her brother-in-law. [J.S.] related to Trooper Carter that her daughter, J.S., told her that Chris had been touching her "front butt." J.S. was 11 years old at the time this started occurring. Trooper Carter spoke to Chris Thrasher's wife, Stephanie, about the allegation. Stephanie Thrasher indicated in their conversation that Chris had been acting differently and she felt like something was wrong. Stephanie Thrasher indicated to Trooper Carter that he had done what J.S. said he did, that "something was wrong with him and he needed help." She did relate to Trooper Carter that Chris later recanted this statement to her.

Acting on information received, Affiant [Trooper Warinner] conducted the following independent investigation: On November 1, 2020, I received a copy of an email from Stephanie Thrasher that she had found when going through old computers and other things at her house. The email appears to be a conversation regarding an underage child, approximately 12 to 13 years old based on the context of the conversation between Chris Thrasher and an unidentified subject. Based on my training and experience and discussions I have had with other investigators and officers who investigate child exploitation offenses, I am aware that individuals who have a sexual interest in children or images of children as referenced in the email I received, may receive sexual gratification, stimulation, and satisfaction from contact with children or from viewing children engaged in sexual activity or in sexually suggestive poses or photographs or other visual media as referenced in the email I received. Individuals who have a sexual interest in children almost always maintain a collection of their child pornography material either in a hard copy form or in a digital electronic format in a safe environment, such as a computer or other digital storage media. The five computers that have been obtained and identified in this affidavit were used by Chris Thrasher.

Notably, the email conversation was not included in the warrant affidavit. The warrant-issuing judge did not consider it and neither did the circuit court when it ruled upon and denied Thrasher's motion to suppress. Thrasher's motion was premised on two contentions. First, that the affidavit states the email conversation was "between Chris Thrasher and an unidentified subject." Thrasher argued the email conversation in fact contains no personal identifying

3

information and that neither of the usernames in the email exchange were linked to him in the affidavit. Secondly, Thrasher argues the affidavit omits that the conversation took place in 2007, thirteen years prior to the search warrant being sought. Thrasher argues this is a material fact reflecting that the email is stale information. These two errors combined, Thrasher argues, render the affidavit fatally defective and lacking probable cause.

The Commonwealth responds that the trial court correctly concluded there is no evidence Trooper Warinner acted intentionally or recklessly when he filed the warrant affidavit, nor is there any evidence Trooper Warinner's apparent assertion that the email conversation was between Thrasher and an unknown person is false. The Commonwealth highlights that Thrasher had the burden to support his argument with an "offer of proof" and that he failed to meet this burden. *Franks v. Del.*, 438 U.S. 154, 171-72 (1978). The Commonwealth also argues the date of the conversation in 2007 was not intentionally or recklessly omitted, or that it reflects stale information. The Commonwealth cites several cases from various federal circuit courts for the general proposition that "staleness" in the specific context of child pornography crimes has a longer time threshold because child pornography is frequently stored electronically and could potentially exist on an electronic storage device for decades if not longer.

The email conversation would later be introduced as evidence at trial. Thrasher did not object to its introduction at trial but now argues its admission was palpable error because the Commonwealth failed to properly authenticate

4

it pursuant to KRE[2] 901. Once again, the conversation itself does not contain any personally identifying information linked to Thrasher and only Stephanie testified to discovering the conversation on one of Thrasher's computers and printing it out in 2007. The Commonwealth argues Stephanie's testimony was enough to authenticate the printout as a true and accurate copy of what it purported to be.

The next issues are also unpreserved and occurred during the penalty phase. First, Thrasher argues the trial court erred in instructing the jury that his convictions were Class C felonies eligible for a sentence between five and ten years each. Although this is currently the law under KRS 531.335(3)(b), the statute prior to March 23, 2021, designated possession of a matter portraying a minor under twelve years of age in a sexual performance as a Class D felony. *See* 2021 Ky. Acts Ch. 81, § 1; *Applegate v. Dickman L. Offs., P.S.C.*, 507 S.W.3d 28, 30 (Ky. App. 2016) (identifying offense as a Class D felony under previous statute). Importantly, the indictment and guilt phase instructions were demarcated by which computer the images were found on and by dates. Hence, the indictment and instructions for Computer #2 were for October 27, 2012, to January 2, 2021; for Computer #3, the indictment covered dates between June 2015 to May 2018, while the instructions were for August 2017 to May 2018. For Computer #4, the indictment's dates were for April 2020 to January 2021 while the instructions were for April 2021 to July 2021.[3] Thus,

---

[2] Kentucky Rules of Evidence.

[3] Thrasher notes in his brief that the "July 2021" date must be a typo based on the underlying indictment and the fact that the Kentucky State Police had seized this

5

Thrasher argues the conduct occurred prior to the legislative amendment of KRS 531.335(3)(b) in March 2021, and the jury should have been limited to considering the offenses he was convicted of as Class D felonies.

In response, the Commonwealth concedes the trial court erred in misidentifying his offenses as Class C felonies. Nonetheless, because KRS 532.080(6)(b) sets the sentencing range for multiple Class D felony convictions at twenty years, the Commonwealth argues there is no error to remedy as that is the sentence Thrasher received. In contrast to Thrasher's view that the jury was lenient towards him, the Commonwealth contends the least the jury could have sentenced him to was five years had it chosen to recommend concurrent sentencing. Instead, it chose a five-year recommendation on each count to be served concurrently in part and consecutively in part for a total of twenty-two-years.

Next, Thrasher argues the trial court erroneously instructed the jury the maximum sentence he could receive was seventy years. Given the sentencing cap in KRS 532.110(1)(c), Thrasher argues the maximum sentence he could receive was twenty years. Thus, he contends the trial court palpably erred in mis-instructing the jury. He argues the prejudice of this error is demonstrated by the jury recommending a twenty-two-year sentence, less than a third of the potential maximum it was erroneously informed of. The Commonwealth, too,

---

computer in January 2021. We agree, as Thrasher could obviously not be guilty of possessing or viewing matters portraying a sexual performance by a minor on a computer in the custody of the Commonwealth after it was seized on January 16, 2021.

only argued for a twenty-year sentence. The trial court later declined to follow the twenty-two-year recommendation because it believed the maximum sentence available was twenty years. The Commonwealth concedes the trial court misinformed the jury regarding the maximum length of sentence but argues there is no palpable error since Thrasher received an authorized sentence.

Similarly, Thrasher also argues the jury was inaccurately informed of the conditions of parole eligibility. During the penalty phase, the Commonwealth elicited testimony that Thrasher would be eligible for parole after serving twenty percent of his total sentence. Thrasher now argues the jury should have also been informed that for those convicted of sex crimes, parole is unavailable until completion of the Sex Offender Treatment Program. KRS 197.045(4). The Commonwealth responds that Thrasher's argument that he might have received a lesser sentence had the jury been informed of this requirement is speculative and not adequate grounds for reversal.

## II. Analysis

### A. Probable Cause Existed to Issue Search Warrant

The suppression issue is preserved.[4] Our standard of review is well-known.

---

[4] The Commonwealth argued in its brief that this issue should not be considered on the merits because Thrasher had not put forth evidence below making a *prima facie* showing that he was not a participant in the email conversation. While that is the requirement of *Franks*, 438 U.S. at 171, we must be cognizant that in the specific context of this case, that would require Thrasher to prove a negative—that he was not a participant in the email conversation. "Of course, the difficulty, even impossibility, of proving a negative has been noted frequently in our jurisprudence."

7

The proper test for appellate review of a suppression hearing ruling regarding a search pursuant to a warrant is to determine first if the facts found by the trial judge are supported by substantial evidence and then to determine whether the trial judge correctly determined that the issuing judge did or did not have a "substantial basis for ... concluding" that probable cause existed.

*Commonwealth v. Pride*, 302 S.W.3d 43, 49 (Ky. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)) (internal citations omitted).

When a defendant attacks the fruit of a search warrant based on the premise that the information supplied to the issuing magistrate is inaccurate . . . the defendant is required to show that: (1) the affidavit contains intentionally or recklessly *false* statements, and (2) the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause.

*Hayes v. Commonwealth,* 320 S.W.3d 93, 101 (Ky. 2010). All agree that information contained in a warrant affidavit must be truthful but the Supreme Court of the United States long ago made clear that "[t]his does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct . . . [only] that the information put forth is believed or appropriately accepted by the affiant as true." *Franks,* 438 U.S. at 165.

The flaw in Thrasher's argument is his assertion that the affidavit asserts as fact that the email conversation took place "between Chris Thrasher and an unknown subject." That is not the full sentence, and we will not read a warrant

---

*Univ. of Ky. v. Hatemi,* 636 S.W.3d 857, 874 (Ky. App. 2021). Kentucky courts have long recognized such an imposition "in the general, should not be done." *Mills v. Rouse,* 12 Ky. 203, 206 (1822). Finally, in previous cases where we have determined the defendant did not put on sufficient proof to warrant a hearing under *Franks,* we have still proceeded to consider "whether the issuing judge had a substantial basis for concluding that probable cause existed." *Rawls v. Commonwealth,* 434 S.W.3d 48, 58 (Ky. 2014).

affidavit out of context. The full sentence reads, "The email appears to be a conversation regarding an underage child, approximately 12 to 13 years old based on the context of the conversation between Chris Thrasher and an unidentified subject." The sentence begins by couching its claim in equivocal terms—the email "appears to be a conversation" between Chris Thrasher and an unknown person regarding a thirteen-year-old girl. Importantly, the conversation itself was not made a part of the warrant affidavit and was not considered by the courts below. That was correct as reviewing courts are limited to the four-corners of the affidavit itself. *Gates*, 462 U.S. at 240.

We conclude the affidavit does not contain an intentionally false statement or a statement made with reckless disregard for its truth. We read the statement as nothing more than Trooper Warinner stating he had seen a conversation which appeared to be between Thrasher and another person on the topic of exchanging illegal photos. This is supported by the fact that the conversation itself unambiguously refers to an underage girl by her age—there is nothing speculative about it on that topic. Thus, the "appears to be" language is appropriately referred to the participants in the conversation where there is ambiguity and not the content of the conversation where there is no ambiguity.

That this statement may not have been or may not now be true in the sense that it is a brute fact is not the standard. The statement need only be one "appropriately accepted by the affiant as true[,]" at the time it was made. *Franks*, 438 U.S. at 165. Trooper Warinner recounted how he came to possess

9

the conversation, described an open investigation of Thrasher regarding the sexual abuse of his niece, as well as hearsay statements by his wife that Thrasher had initially admitted to the abuse of his niece though later recanted. Thus, we conclude the affidavit contained a sufficient description of the background to justify why Trooper Warinner would believe the email conversation included Thrasher as a participant.

As to the omission of the date of the conversation in 2007, it is blackletter law that "stale information cannot be used in a probable cause determination." *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009). As to including time and dates of evidence in warrant affidavits, we have endorsed "the better practice to include such information, as it forecloses any complaint about the staleness of the information." *Abney v. Commonwealth*, 483 S.W.3d 364, 369 (Ky. 2016). But we have not established a bright line rule that such information is always required. Time and dates may be omitted so long as the other information in the affidavit under "the totality of the circumstances indicates with reasonable reliability that the evidence sought is located in the place to be searched." *Id.*

The Commonwealth correctly notes that in the context of child pornography contained on electronic devices, federal courts have recognized that the length of time to determine staleness is significantly longer than in other contexts. *Frechette,* 583 F.3d at 377; *United States v. Wagner*, 951 F.3d 1232, 1246 (10th Cir. 2020); *United States v. Bosyk*, 933 F.3d 319, 330 (4th Cir. 2019). At least one court has concluded that events believed to have

10

occurred five to eight years prior to the issuance of the search warrant for child pornography was not stale; however, that case is distinguishable as the underlying allegation came from the defendant's daughter who specifically accused her father of videotaping her abuse. *United States v. Ebert*, 61 F.4th 394, 398 (4th Cir. 2023). On the other hand, another court has determined images uploaded on the internet, alone and without any indication in the affidavit for when they were uploaded (though were likely two to four years old), was stale. *United States v. Prideaux-Wentz*, 543 F.3d 954, 958-59 (7th Cir. 2008).

Courts have spoken in strong language regarding the staying power of evidence of child pornography: "the images can have an infinite life span." *Frechette*, 583 F.3d at 378. Taken too literally, such language would essentially nullify the staleness doctrine vis-à-vis child pornography, or indeed any digital crime. Thus, "there must be some limitation on this principle." *Prideaux-Wentz*, 543 F.3d at 958. For example, that collectors of child pornography tend to hoard their illicit materials over time and secure their possession by some means is relevant to a probable cause determination but only "if there is probable cause to believe that a given defendant *is* such a collector." *United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) (quoting *United States v. Coreas*, 419 F.3d 151, 156 (2d Cir. 2005)). Boilerplate assertions about the proclivities of child pornography collectors have no salience if the underlying circumstances described in the warrant affidavit do not establish probable cause to believe the suspect is a child pornography collector.

11

Another guardrail is the frequent combination of new evidence so as to revivify old evidence. *Prideaux-Wentz*, 543 F.3d at 958 (citing *United States v. Newsom,* 402 F.3d 780, 783 (7th Cir. 2005) and *United States v. Harvey,* 2 F.3d 1318, 1322–23 (3d Cir. 1993)). "[O]therwise stale information may be refreshed by more recent events." *United States v. Cantu,* 405 F.3d 1175, 1177-78 (10th Cir. 2005). This case is an instance of this scenario. A thirteen-year-old printout of a conversation without any evidence Thrasher was a participant in that conversation would likely lead to a conclusion the warrant was based on stale information if that was the sole evidence detailed in the affidavit. It was not the sole evidence in the underlying affidavit. Trooper Warinner also recounted that Thrasher was a suspect in an open investigation regarding the sexual abuse of his niece; that investigation began in June 2020, only six months prior to the warrant being sought; and that Thrasher's ex-wife had informed Kentucky State Police that he had initially admitted to the abuse but later recanted. The more recent information, therefore, revivified the relevance of the email conversation such that the warrant was not based upon stale information. The warrant was supported by probable cause and the trial court correctly denied Thrasher's motion to suppress.

### B. Harmless Error in Admission of Email Conversation

The email conversation is once more a subject of controversy as Thrasher argues the trial court palpably erred when it allowed the conversation to be admitted into evidence without proper authentication. There was no objection

at trial, so we review for a manifest injustice. RCr.[5] 10.26. "To discover manifest injustice, a reviewing court must plumb the depths of the proceeding . . . to determine whether the defect in the proceeding was shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006).

Under KRE 901, to authenticate a document the proponent need only establish the document is what it purports to be. "The burden on the proponent of authentication is slight; only a prima facie showing of authenticity is required." *Sanders v. Commonwealth*, 301 S.W.3d 497, 501 (Ky. 2010). In *Brafman v. Commonwealth*, we observed "the susceptibility of cellular messages and screenshots to quick fabrication and alteration requires a more discerning eye from the trial court and more than mere assertions by a lay witness that they were sent by the criminal defendant." 612 S.W.3d 850, 867-68 (Ky. 2020). In that case, printouts of text messages were introduced into evidence merely on the assertion of a witness that the defendant was the one who sent the messages to him. *Id.* That was inadequate as "[n]othing about the screenshot links the messages to Brafman [the defendant] personally," nor did the Commonwealth even establish the phone number belonged to him. *Id.* at 867.

In this case, Stephanie testified she discovered the email on Thrasher's computer in 2007, printed out the conversation, and then kept it with her personal belongings until rediscovering it thirteen years later. Similar to *Brafman*, nothing about the printout personally links Thrasher to it. There was

---

[5] Kentucky Rules of Criminal Procedure.

no evidence indicating that either of the participants in the conversation was in fact Thrasher. Trooper Warinner testified by deposition that the digital report after the computers had been searched made no mention of the email conversation, thus, there was nothing linking the conversation to any of the images found on his computers. Since *Brafman* held authentication could not be established by a participant in a digital conversation absent more direct evidence linking that conversation to the defendant as a participant, we conclude a third-party, non-participant to a conversation is obviously incapable of authenticating a printout of an email conversation insofar as she is capable of testifying Thrasher in fact participated in the conversation. To be clear, Stephanie's testimony was not that she witnessed Thrasher sending or receiving the messages which would change the analysis, only that she found the conversation on his computer. The Commonwealth's inability to link Thrasher to one of the two email addresses in the conversation even after a forensic search of four of his computers is fatal. We, therefore, conclude there was error, but it is not palpable.

Given the weight of the evidence, the more than one hundred images found on three computers belonging to Thrasher, and that his only defense was absolute innocence, therefore, someone else must have downloaded such images, we do not think there is a substantial possibility of a different result had the email conversation not been introduced into evidence. It is simply not an error that, upon review of the record, "jumps off the page ... and cries out for relief." *Chavies v. Commonwealth*, 374 S.W.3d 313, 323 (Ky. 2012) (quoting

14

*Alford v. Commonwealth*, 338 S.W.3d 240, 251 (Ky. 2011) (Cunningham, J., concurring)).

### C. Palpable Error in Misinforming Jury on Felony Status and Maximum Sentence Length

Finally, there are the penalty phase errors. Notably, the Commonwealth concedes that error occurred in both instances but argues none were palpable. We do not agree. The trial judge mis-instructing the jury that Thrasher's convictions were Class C felonies, thus subject to a higher mandatory minimum of five years rather than one year, KRS 532.060(2), combined with the trial court's erroneous instruction that the maximum sentence Thrasher could have received was seventy years, was palpable error.[6]

Because the Commonwealth concedes these errors, we need not discourse at length upon them. The indictment and jury instructions were predicated upon dates and times that predated the General Assembly's elevation of possession of matter portraying a minor in a sexual performance from a Class D felony to a Class C felony. The trial court erred in instructing the jury otherwise. The trial court then erred in informing the jury the maximum sentence possible was seventy years when it was in fact twenty years. KRS 532.110(1)(c)1; KRS 532.080(6).

The jury having been so instructed then recommended a sentence of twenty-two years. Realizing its error, the trial court reduced the sentence to

---

[6] To be clear, however, the error regarding the misidentification of the convictions as Class C felonies rather than Class D felonies is a sentencing issue not subject to the rule of preservation. *Webster v. Commonwealth*, 438 S.W.3d 321, 326 (Ky. 2014).

twenty years. Thrasher argues the jury's recommendation shows an inclination to leniency; it was erroneously told it could give up to seventy years and chose a sentence less than a third of that. Accordingly, argues Thrasher, had it been correctly informed the maximum sentence was twenty years, there is a substantial possibility it might have recommended a lesser sentence. The Commonwealth makes the strange argument that because the jury did not recommend the lowest possible sentence it thought it could have given—five years on each count to be served concurrently—it was not trying to be lenient. To quote the Commonwealth, "given their sentence recommendation, which was not the minimum penalty (five years), Thrasher has failed to show any likelihood of a lighter sentence." We reject this reasoning. Leniency is not binary. It operates on a spectrum. A jury's choice to not give the least possible sentence does not in and of itself demonstrate that it was not inclined to leniency. We agree with Thrasher that recommending a sentence of only twenty-two years after being misinformed it could have given a seventy-year sentence does in fact indicate a disposition toward leniency.

The Commonwealth also argues that we should reconceptualize the jury's recommendation. As that argument goes, Thrasher was found guilty of twenty-two counts. The jury gamed the math in the sentencing phase so that it recommended the minimum five-year sentence on each count, then declared the sentence should be served concurrently in part, consecutively in part for a total of twenty-two years. Essentially, the Commonwealth argues to reconceptualize the jury recommendation as one year in prison for each count

16

to be served consecutively. Although this argument is somewhat persuasive as a plausible explanation of what the jury was doing, the Commonwealth's extrapolation from this reconceptualization is conclusory: "they thought he deserved the twenty-two-year sentence." That is a truism—every jury believes the defendant deserves the sentence it recommends. The better extrapolation is that had the jury been correctly informed of the maximum twenty-year cap, its recommendation of twenty-two years is not so discordant that it likely would have recommended less. Nevertheless, we must discern the jury's mind in the circumstances as it existed at trial, and we believe those circumstances demonstrate the jury was not inclined to hand down a maximum sentence but be lenient.

Lastly, although Thrasher ultimately received an authorized sentence but for the errors of the trial court, he points out that because of those errors the trial court ended up giving him the maximum possible sentence contrary to the leniency evidenced by the jury's recommendation. We agree. We, therefore, conclude the foregoing errors combined in such a way that there is a substantial possibility that had the jury been correctly instructed on the classification of the sentences and correctly instructed on the maximum sentence possible, the recommendation would have been less than twenty years and, consequently, the sentence ultimately given by the trial court would

have been different. We vacate Thrasher's sentence and remand for a new penalty phase.[7]

### III. Conclusion

Thrasher's convictions are affirmed. The search warrant at issue was supported by probable cause and there was no palpable error in the admission of the email conversation into evidence at trial. We vacate his sentence. We conclude the jury was inclined to leniency and the trial court's errors in misinforming the jury as to the classification of the offenses and the maximum sentence allowable had such an impact that a substantial possibility of a different result exists absent the errors. We remand to Clinton Circuit Court for resentencing.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Molly Mattingly
Kathleen Kallaher Schmidt
Assistant Public Advocates


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General

---

[7] We express no opinion on any other issue presented by this appeal.

18